# 24-1237-cv

## United States Court of Appeals

*for the*

## Second Circuit

———————◆———————

MINISTER LOUIS FARRAKHAN, NATION OF ISLAM,

*Plaintiffs-Appellants,*

— v. —

ANTI-DEFAMATION LEAGUE, JOHNATHAN GREENBLATT, individually,
in his official capacity as CEO and national director of the Anti-Defamation
League, RABBI ABRAHAM COOPER, individually and in his official capacity
as Director of Social Global Action Agenda for Simon Wiesenthal Center,
SIMON WIESENTHAL CENTER,

*Defendants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES ANTI-DEFAMATION LEAGUE, JOHNATHAN GREENBLATT, INDIVIDUALLY, IN HIS OFFICIAL CAPACITY AS CEO AND NATIONAL DIRECTOR OF THE ANTI-DEFAMATION LEAGUE

NATHAN E. SIEGEL
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005
(202) 973-4200

ADAM I. RICH
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas,
  21st Floor
New York, New York 10020
(212) 489-8230

*Attorneys for Defendants-Appellees Anti-Defamation League,
Johnathan Greenblatt, Individually, in his Official Capacity as CEO
and National Director of the Anti-Defamation League*

CP COUNSEL PRESS    (800) 4-APPEAL • (332196)

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Anti-Defamation League states that it is a not-for-profit corporation.  It has no corporate parent, nor does it issue any stock.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................1

COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW ..................2

COUNTERSTATEMENT OF THE CASE...........................................3

    A.    The Parties.................................................................3

    B.    Farrakhan In His Own Words ......................................4

    C.    The Second Amended Complaint ..................................6

        1.    Alleged Constitutional Torts (Counts 1-5) ......................6

    a.    Alleged Conduct Under Color of Federal Law (Counts 1-3, 11-12) ....................................................................6

    b.    Alleged Conduct Under Color of State Law (Counts 4-5) ........9

        2.    The Defamation Claims (Counts 6-7) ...........................9

    a.    The Kanye West Article ............................................10

    b.    The Ticketmaster Letter ...........................................10

    c.    Saviours' Day Blog Post ..........................................11

    D.    The Proceedings Below ..........................................12

        1.    Plaintiffs Lack of Standing To Assert Their First Amendment Claims (Counts 1-5)..................................12

        2.    Dismissal of Plaintiffs' Claims for Declaratory and Injunctive Relief ..................................................14

        3.    Dismissal of Farrakhan's Defamation Claims (Counts 6-7)......................................................14

STANDARD OF REVIEW ...........................................................15

i

SUMMARY OF ARGUMENT ................................................................16

ARGUMENT ....................................................................................18

I.    Counts 1-5 Were Properly Dismissed For Lack of Standing .............18

    A.    Applicable Law ..............................................................18

    B.    Application ....................................................................21

        1.    Count One ............................................................21

    a.    The SAC Does Not Plausibly Plead That Morgan State's Decision Was Fairly Traceable to ADL ....................21

        2.    Count Two ............................................................22

    a.    Farrakhan's Alleged Fear of Arrest, Prosecution, and Imprisonment Is Implausible Conjecture..................22

    b.    Farrakhan's Alleged Injury Is Not Fairly Traceable to ADL ....27

        3.    Count Three ..........................................................28

        4.    Counts Four and Five ............................................29

    a.    NOI's alleged injuries are neither concrete nor particularized .29

    b.    The SAC pleads no causal link between ADL and their alleged injuries....................................................................32

    C.    NOI Lacks Prudential Standing To Assert Claims For Its Members (Counts 4 and 5)....................................................33

II.    Dismissal of Counts 1-5 Should be Affirmed On The Alternate Ground That They Fail To State A Claim Upon Which Relief Can Be Granted ....................................................................34

    A.    Plaintiffs Fail To State a *Bivens* Claims (Counts 1-3) .............35

    B.    Plaintiffs Fail to State a Section 1983 Claim (Counts 4-5) ......37

III.    The District Court Did Not Abuse Its Discretion In Denying the Claims For Declaratory Judgment (Counts 11-12) .............................41

IV.     The District Court Did Not Abuse Its Discretion In Denying the
        Claim For An Injunction (Count 12) ..................................................43

V.      The District Court's Decision to Dismiss Farrakhan's
        Defamation Claims (Counts 6-7) Should Be Affirmed.......................44

        A.      Applicable Law ..........................................................................44

        B.      The Challenged Statements are Nonactionable Opinion ..........47

        C.      Plaintiffs Cannot Plausibly Plead That The Challenged
                Statements Are Materially False .................................................54

        D.      The SAC Fails To Plausibly Plead Actual Malice ....................55

CONCLUSION .........................................................................................................58

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adelson v. Harris*,
  973 F. Supp. 2d 467 (S.D.N.Y. 2013) *aff'd*, 876 F.3d 413 (2d Cir. 2017) ........51

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
  821 F.3d 352 (2d Cir. 2016) ........................................................................18, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................35, 37

*Atamian v. Gentile*,
  337 F. App'x 182 (3d Cir. 2009) ........................................................................54

*Ateres Bais Yaakov Academy v. Town of Clarkstown*,
  88 F.4th 344 (2d Cir. 2023) ....................................................................20, 28, 29

*Bailey v. N.Y. Law Sch.*,
  No. 19-3473, 2021 WL 5500078 (2d Cir. Nov. 24, 2021) ................................39

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1963).........................................................................................25, 26

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................21, 35

*Bennett v. Spear*,
  520 U.S. 154 (1997).......................................................................................19, 21

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015) ..............................................................................47

*Biro v. Condé Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012) ..............................................................46

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
  403 U.S. 388 (1971).....................................................................................*passim*

*Brahms v. Carver*,
    33 F. Supp. 3d 192 (E.D.N.Y. 2014) ....................................................51

*Brimelow v. N.Y. Times Co.*,
    No. 21-66-cv, 2021 WL 4901969 (2d Cir. Oct. 21, 2021), *cert. denied*, 142 S.
    Ct. 1210 (2022)
    ....................................................................................................47

*Buckley v. Littell*,
    539 F.2d 882 (2d Cir. 1976) ..............................................................48

*Celle v. Filipino Reporter Enters., Inc.*,
    209 F.3d 163 (2d Cir. 2000) .........................................................44, 45

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ................................................................5

*Chau v. Lewis*,
    771 F.3d 118 (2d Cir. 2014) ..............................................................45

*Citizens for Resp. & Ethics in Washington v. Trump*,
    953 F.3d 178 (2d Cir. 2019) .......................................................*passim*

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013).....................................................................18, 23

*Cohen v. Trump*,
    No. 23-35, 2024 WL 20558 (2d Cir. Jan. 2, 2024), *pet. for cert. docketed*, No.
    24-41 (U.S. July 15, 2024).............................................................36, 37

*Colombo v. O'Connell*,
    310 F.3d 115 (2d Cir. 2002) ..............................................................32

*Connecticut Citizens Defense League, Inc. v. Thody*,
    No. 23-724-cv, 2024 WL 177707 (2d Cir. Jan. 17, 2024) ..................................41

*Cooper v. Franklin Templeton Invs.*,
    No. 22-2763-cv, 2023 WL 3882977 (2d Cir. June 8, 2023) .................44, 46, 48

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001).....................................................................36, 42

*Cummings v. City of N.Y.*,
No. 21-1380, 2022 WL 2166585 (2d Cir. June 16, 2022)..................................46

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ...............................................23

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
411 F.3d 384 (2d Cir. 2005) ...............................................15

*Dunn v. Carrier*,
137 F. App'x 387 (2d Cir. 2005) ...............................................39

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)...............................................16

*Egiazaryan v. Zalmayev*,
880 F. Supp. 2d 494 (S.D.N.Y. 2012) ...............................................49, 50, 54

*Elias v. Rolling Stone LLC*,
872 F.3d 97 (2d Cir. 2017) ...............................................52

*FDA v. Alliance for Hippocratic Med.*,
602 U.S. 367 (2024)...............................................20, 27

*Floyd v. City of N.Y.*,
302 F.R.D. 69 (S.D.N.Y. 2014), *aff'd in relevant part*, 770 F.3d 1051 (2d Cir. 2014) (per curiam) ...............................................29

*Gagliardi v. Village of Pawling*,
18 F. 3d 188 (2d Cir. 1994) ...............................................40

*Gilliard v. N.Y. Pub. Library Sys.*,
597 F. Supp. 1069 (S.D.N.Y. 1984) ...............................................42

*Global Reinsurance Corp. of Am. v. Century Indem. Co.*,
22 F.4th 83 (2d Cir. 2021) ...............................................43

*Green v. Jackson*,
36 F. App'x 663 (2d Cir. 2002) ...............................................23

*Guccione v. Hustler Mag., Inc.*,
800 F.2d 298 (2d Cir. 1986) ...............................................46

*Hammerhead Enters., Inc. v. Brezenoff*,
    707 F.2d 33 (2d Cir. 1983) ...............................................................40

*Hedges v. Obama*,
    724 F.3d 170 (2d Cir. 2013) .............................................................23

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) ...................................................................4

*Jewell v. NYP Holdings, Inc.*,
    23 F. Supp. 2d 348 (S.D.N.Y. 1998) ...............................................46

*John v. Whole Foods Mkt. Grp., Inc.*,
    858 F. 3d 732 (2d Cir. 2017) ............................................................32

*KM Enters., Inc. v. McDonald*,
    518 F. App'x 12 (2d Cir. 2013) .......................................................42

*Larry Carter Ctr. v. Catholic Charities*,
    No. 5:15-CV-0597, 2015 WL 4067559 (N.D.N.Y. July 2, 2015).....................36

*League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*,
    737 F.2d 155 (2d Cir. 1984) .............................................................34

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
    638 F. Supp. 1149 (D.D.C. 1986), *aff'd*, 838 F.2d 1287 (D.C. Cir. 1988) ........54

*Manhattan Cmty. Access Corp. v. Halleck*,
    587 U.S. 802 (2019)...........................................................................43

*Masson v. New Yorker Mag., Inc.*,
    501 U.S. 496 (1991)...........................................................................46

*McClanahan v. Anti-Defamation League*,
    No. 23-05076-CV-SW-JAM, 2023 WL 8704258 (W.D. Mo. Dec. 15, 2023)...53

*McMorris v. Carlos Lopez & Assocs.*,
    995 F.3d 295 (2d Cir. 2021) ...............................................19, 20, 25

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)...........................................................................32

*Metro. Opera Ass'n v. Local 100, Hotel Emps. & Rest. Emps. Int'l*,
239 F.3d 172 (2d Cir. 2001) ...................................................43

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
418 F.3d 168 (2d Cir. 2005) ...................................................34

*Miller v. Vohne Liche Kennels, Inc.*,
600 F. App'x 475 (7th Cir. 2015) ...........................................38

*Mirage Ent., Inc. v. FEG Entretenimientos S.A.*,
326 F. Supp. 3d 26 (S.D.N.Y. 2018) .......................................51

*Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*,
759 F.2d 219 (2d Cir. 1985) ...................................................45

*Nitke v. Ashcroft*,
253 F. Supp. 2d 587 (S.D.N.Y. 2003) .....................................31

*Oakley v. Dolan*,
833 F. App'x 896 (2d Cir. 2020) .............................................47

*Palmer v. Occidental Chem. Corp.*,
356 F.3d 235 (2d Cir. 2004) ...................................................35

*Peralta v. 32BJ SEIU*,
21-1638, 2022 WL 792164 (2d Cir. Mar. 16, 2022) .................37

*Procter & Gamble Co. v. Bankers Tr. Co.*,
78 F.3d 219 (6th Cir. 1996) ...................................................43

*Rapaport v. Barstool Sports Inc.*,
No. 22-2080-cv, 2024 WL 88636 (2d Cir. Jan. 9, 2024) ......44, 48

*Reichle v. Howards*,
566 U.S. 658 (2012)................................................................37

*Rendell–Baker v. Kohn*,
457 U.S. 830 (1982)................................................................38

*Rolle v. Girardi*,
689 F. App'x 64 (2d Cir. 2017) ..............................................19

*Secs. Inv. Protection Corp. v. BDO Seidman, LLP*,
   222 F. 3d 63 (2d Cir. 2000) ...............................................................15

*Shapiro v. Holdman*,
   No. 14 Civ. 10119 (NRB), 2016 WL 4371741 (S.D.N.Y. Aug. 15, 2016), *aff'd*,
   696 F. App'x 532 (2d Cir. 2017) .......................................................36

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .......................................................................18, 19

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) .......................................................................56, 57

*Steffel v. Thompson*,
   415 U.S. 452 (1974) ..............................................................................26

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ..............................................................................19

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ..............................................................................26

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
   864 F.3d 236 (2d Cir. 2017) ...............................................................46

*Torain v. Liu*,
   279 F. App'x 46 (2d Cir. 2008) .....................................................46, 48

*United Mine Workers v. Illinois Bar Assoc.*,
   389 U.S. 217 (1967) ..............................................................................40

*Wade v. Byles*,
   83 F.3d 902 (7th Cir. 1996) ................................................................38

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ..............................................................................19

*X-Men Security, Inc. v. Pataki*,
   196 F.3d 56 (2d Cir. 1999) ..................................................................40

**State Cases**

*Brian v. Richardson*,
  87 N.Y.2d 46 (1995) ............................................................. 53

*Comic Strip Promotions, Inc. v. Envivo LLC*,
  76 Misc. 3d 1229(A), (Sup. Ct. N.Y. Cnty. 2022) ............................ 49

*Gross v. N.Y. Times Co.*,
  82 N.Y.2d 146 (1993) ........................................................... 44

*Russell v. Davies*,
  97 A.D.3d 649 (2d Dep't 2012) ................................................. 48

*Silverman v. Daily News, L.P.*,
  129 A.D.3d 1054 (2d Dep't 2015) ............................................... 48

*Steinhilber v. Alphonse*,
  68 N.Y.2d 283 (1986) ........................................................... 53

*Valley Elecs. AG v. Polis*,
  No. 21-2108-cv, 2022 WL 893674 ................................................ 51

**Federal Statutes**

42 U.S.C. § 1983 ..........................................................*passim*

**State Statutes**

N.Y. Civ. Rights Law § 76-a(1)(a)(2) ........................................... 47

## PRELIMINARY STATEMENT

Ostensibly to prove that he is not an antisemite, Plaintiffs Louis Farrakhan ("Farrakhan") and the Nation of Islam ("NOI") (together, "Plaintiffs") seek to become billionaires by bankrupting the world's leading organizations fighting antisemitism and commemorating the Holocaust. Their fundamental claim against ADL is that Jews are so powerful that the courts should declare ADL to be the government. The irony behind this lawsuit is rich. Its legal merit is not. The District Court properly dismissed Plaintiffs' complaint, and its Order should be affirmed.

Farrakhan and NOI bring essentially two sets of claims against ADL. First, they argue that by engaging with public officials and advocating for public policies to combat antisemitism (*i.e.*, exercising rights guaranteed by the First Amendment), ADL became a "quasi-governmental" entity infringing *Plaintiffs'* First Amendment rights. Second, Farrakhan alleges that he was defamed when ADL labeled him "virulently" and "notoriously antisemitic," and reported that he referred to Jews as "termites" and "satanic," and that he "predict[ed] another holocaust" (together, the "Challenged Statements").

ADL and Greenblatt moved to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). District Court Judge Denise Cote (the "District Court") granted the motion, finding that all of Plaintiffs' claims fail as a matter of law. *First*, the District Court held that Plaintiffs lack standing to maintain their First

Amendment claims since they fail to plausibly allege a single injury-in-fact fairly traceable to any unlawful actions of ADL or Greenblatt. *Second*, the District Court denied Plaintiffs' meritless claims for judicial declarations that ADL is a "quasi governmental federal agency," and that "false accusations of antisemitism" should be added to the categories of defamation *per se* under New York law. *Third*, the District Court dismissed Plaintiffs' request for an injunction to silence ADL and prevent it from criticizing Farrakhan and NOI, because such relief would constitute an unconstitutional prior restraint. *Fourth*, the District Court dismissed Farrakhan's defamation claims, finding that each of the Challenged Statements are either protected opinion, or substantially true, and that Farrakhan did not plausibly plead actual malice.

The District Court's well-reasoned opinion should be affirmed.

## COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether the District Court properly dismissed Counts 1-5 of the Second Amended Complaint (the "SAC") for lack of Article III standing.

2.     Whether dismissal of Counts 1-3 of the SAC should be affirmed on the alternate ground that only individual federal officers can be held liable for deprivations of constitutional rights under color of federal law, and there is no implied *Bivens* remedy for alleged First Amendment injuries.

3.     Whether dismissal of Counts 4-5 of the SAC should be affirmed on the

alternate ground that the SAC failed to plausibly plead any basis for transforming a not-for-profit organization into a state actor liable for constitutional violations pursuant to 42 U.S.C. § 1983.

4.  Whether it was an abuse of discretion for the District Court to decline to exercise jurisdiction over Claims 10-11 of the SAC under the Declaratory Judgment Act.

5.  Whether it was an abuse of discretion for the District Court to dismiss as an impermissible prior restraint Plaintiffs' request to enjoin ADL and Greenblatt from condemning Farrakhan and ADL.

6.  Whether dismissal of Plaintiffs' defamation claims against ADL and Greenblatt (Counts 6-7) should be affirmed on the grounds that each of the Challenged Statements is protected opinion based upon disclosed facts, at least one is substantially true, and the SAC fails to plausibly plead actual malice.

## COUNTERSTATEMENT OF THE CASE[1]

### A.  The Parties

Founded in 1913, Defendant ADL is a not-for-profit corporation (A-24 ¶ 16)

---

[1] References herein to "SPA-#" refer to the District Court's Order, which was filed by Appellants in a Special Appendix.  Dkt. Entry No. 40.1.  References herein to "A-#" refer to the Appendix filed by Appellants.  Dkt. Entry Nos. 41.1 and 42.1. References herein to "SA-#" refer to the Supplemental Appendix filed by ADL and Greenblatt.

working to combat antisemitism and all forms of bias. Defendant Greenblatt is ADL's National Director and CEO. *Id.* ¶ 17. NOI is a Chicago-based not-for-profit corporation dedicated to the Teachings of the Most Honorable Elijah Muhammad. *Id.* ¶ 15. Farrakhan is NOI's leader. *Id.*

## B. Farrakhan In His Own Words

Farrakhan's words speak for themselves. Just a few examples of his statements from the exhibits to his own complaint, none of which he denies making, include:

- "The Jews cannot defeat me. I will grind them and crush them into little bits." SA-29.
- "Jews want everyone to bow down to them, and I ain't bowing down to nothing or nobody but G-d." SA-28.
- "We know that the Jews are the most organized, rich and powerful people, not only in America, but in the world. They're plotting against us even as we speak." SA-27.
- "Those who call themselves 'Jews,' who are not really Jews, but are in fact Satan: You should learn to call them by their real name, 'Satan;' you are coming face-to-face with Satan []." SA-3.[2]
- "When you want something in this world, the Jew holds the

---

[2] Citation is made to the version of this exhibit that was attached to Plaintiffs' original complaint (*Farrakhan In His Own Words* (2019)), because Farrakhan and NOI chose to file only a one-page excerpt from this exhibit as part of the SAC. *See* A-192. "'[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

door." SA-2.

- "The Jews were responsible for all of this filth and degenerate behavior that Hollywood is putting out:  turning men into women, and women into men." SA-3.

Also at issue in this case, Farrakhan delivered a speech on October 14, 2018, in which he said, "So when they talk about Farrakhan, call me a hater.  You know what they do?  Call me an 'anti-Semite.'  Stop it.  I'm anti-termite."  A-131 ¶ 556. *See also* SA-72 at 2:00:08-32 (video recording).[3]   Farrakhan also promoted his comment on Twitter:



SA-74.

---

[3] The video, SA-72, as well as Farrakhan's tweet, SA-74, are incorporated by reference into the SAC because Plaintiffs' claims arise from these remarks.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted).

### C.    The Second Amended Complaint

Plaintiffs commenced this lawsuit on October 16, 2023, A-4, and filed the 150-page SAC on January 5, 2024, A-13.  The SAC includes 672 pages of exhibits, and "details nearly a century's worth of grievances" against ADL that have little relevance to Plaintiffs' present claims.  SPA-2.  To the extent Plaintiffs' claims can even be discerned, they appear to include the following:

### 1.    Alleged Constitutional Torts (Counts 1-5)

Counts 1-5 allege that ADL violated Plaintiffs' First Amendment rights regarding speech, association, and the free exercise of religion.  They are divided into alleged conduct under color of federal law and acts under color of state law.

### a.    Alleged Conduct Under Color of Federal Law (Counts 1-3, 11-12)

Counts 1-3 are premised on the allegation that ADL is "a quasi-governmental entity of the federal government."  A-155 ¶ 702.  The centerpiece of this allegation is that ADL was "instrumental in facilitating" the U.S. National Strategy To Counter Antisemitism, A-73 ¶ 262, a non-binding set of policy goals announced by President Joe Biden in May 2023, which "reflects input from over 1,000 Jewish community stakeholders, faith and civil rights leaders, State and local officials, and more."  A-218.  Plaintiffs' other allegations supporting the theory that ADL is a "quasi-governmental" federal agency include that:  ADL has provided training for law enforcement and FBI directors have spoken of "close relations" between the FBI and

ADL, A-157 ¶ 711; there is an alleged "free sharing of information" between ADL and the FBI, A-159 ¶ 722; and that ADL supposedly sent a "demand letter brazenly command[ing]" the Office of Management and Budget to support funding for anti-hate initiatives in the congressional appropriations process, A-161-162 ¶¶ 733-735.

With respect to Plaintiffs' alleged injuries, Count 1 alleges that Morgan State University denied NOI's application to use its Fine Arts Center to hold an event. A-76 ¶ 279. In its email denying NOI's request, a Morgan State official stated only that "[t]he type of event that you are asking to hold is not suited for our center." A-304. Plaintiffs allege "[u]pon information and belief" that Morgan State denied NOI's request at the behest of ADL, which used its "power and authority derived from its close association with the federal government." A-78 ¶ 290. The SAC makes plain that NOI's purported "belief" is entirely speculative; the only "information" pled to supposedly support this "belief" is the bare fact that NOI's application was granted in 2014 and denied in 2023. A-77 ¶¶ 281-82.

Count 2 alleges that by contributing to the "National Strategy To Counter Antisemitism," ADL seeks "to facilitate the imminent arrest, prosecution, and likely imprisonment" of Farrakhan. A-84 ¶ 326. Count 2 further alleges that Defendant Greenblatt wrote a letter to Ticketmaster about Ticketmaster selling tickets to NOI's 2023 Saviours' Day event in Chicago. A-80 ¶¶ 303-06; A-84 ¶ 327; A-306 (the "Ticketmaster Letter"). Greenblatt expressly stated in the letter that ADL was not

asking Ticketmaster to take "any particular action," A-306, and Plaintiffs admit that, in fact, Ticketmaster took no action in response to the letter. A-84 SAC ¶¶ 327, 328. Plaintiffs also complain that Greenblatt, in a tweet, called on the City of Chicago and the owners of the venue where the event was held to "condemn [Farrakhan's] hateful words." A-80 ¶ 307.

Count 3 alleges that in July 2020, Vimeo, an online video streaming service, cancelled NOI's user account, citing repeated violations of Vimeo's Terms of Service and Community Guidelines. A-89 ¶¶ 353-54. Specifically, Vimeo stated in its cancellation notice that NOI violated Vimeo's policies by sharing videos that are "hateful, harass others, or include defamatory or discriminatory speech." A-315. The notice included a hyperlink to an ADL article titled, "Farrakhan Remains Most Popular Antisemite in America." A-316. Plaintiffs allege without any factual support that ADL "used its authority and sanctioning by the F.B.I. to cause 'Vimeo' to cancel" its account. A-89 ¶ 353.

Relatedly, Plaintiffs seek a declaratory judgment proclaiming that "false" use of the term "anti-Semite" is deemed added to the list of categories that constitute "de facto defamation *per se* under New York caselaw," A-155 ¶¶ 698-700 (Count 10), and that ADL is a "quasi-governmental entity of the U.S. government," A-155-164 ¶¶ 701-46 (Count 11). They also seek an injunction prohibiting the ADL "contacting venues ahead of speaking events [featuring Plaintiffs] in an attempt to have the event

cancelled," A-165 ¶ 756 (Count 12).

>   **b.    Alleged Conduct Under Color of State Law (Counts 4-5)**

Counts 4 and 5 allege that ADL acted under color of state law to interfere with Plaintiffs' free exercise of religion and association rights.  A-90-119 ¶¶ 360-530.  The claim that ADL is a state actor is premised upon assertions like (1) Governor Hochul announced (in September 2023) state efforts to combat antisemitism, including by adopting recommendations in the National Strategy to Counter Antisemitism (A-91 ¶¶ 368-72); (2) in the past, ADL has made presentations to the New York State Police, and may do so again (A-93-94 ¶¶ 380-86); and (3) in a November 2022 press conference, Mayor Adams said that the City was "partnering" with multiple organizations, including ADL, as well as various rabbis, to discuss "How do we create environments where hate cannot grow in our cities?"  A-372; A-100-101 ¶¶ 424-29.  On that basis, the SAC speculates that ADL will, at some point, be deputized to be in charge of all state and local investigations of hate crimes.  A-92 ¶ 375; A-100 ¶ 420; A-105 ¶ 448.  Plaintiffs speculate that this will pose "a real and imminent threat" to the First Amendment rights of them and their members.  *Id.* A-99 ¶ 418.

>   **2.    The Defamation Claims (Counts 6-7)**

The SAC alleges that Farrakhan was falsely accused of being antisemitic in two publications:  an ADL blog post titled, "Extremists Are Praising Kanye West's

Antisemitism, Parler Acquisition" (the "Kanye West Article"); SA-64, and the Ticketmaster Letter, A-306.  *See* A-120 ¶¶ 534-37.

### a.    The Kanye West Article

The Kanye West Article refers to NOI as "virulently antisemitic," SA-65, linking to a lengthy ADL profile of the Nation of Islam, which contains numerous quotes from Farrakhan and other NOI speakers and publications, SA-76.  The Kanye West Article also quotes multiple prior statements by senior NOI officials, including that there is a "Jewish gay mafia that controls hip-hop and has used hip-hop to socially engineer Black America," that Jews are "a very dangerous enemy," and that "Hip Hop is being used by real Devils to get us to offer ourselves and our children up to a very real Blood Sacrifice" by "demonic High Priests" who are "all Jewish" and "have ingested all of the 'blood' that we have sacrificed on their alter."  SA-66.

### b.    The Ticketmaster Letter

Two other Challenged Statements are contained in the Ticketmaster Letter. Greenblatt describes Farrakhan as "one of the most notorious antisemites in the country." A-306.  Greenblatt then proceeds to list specific past statements, including that Farrakhan referred to Jews as "'termites' and 'satanic,'" "denied the magnitude of the Holocaust" and "blamed Jews for its occurrence," that "pedophilia and sexual perversion . . . can be traced to Talmudic principles and Jewish influence," and that "many Israelis and Zionist Jews [had] key roles in the 9/11 attacks."  A-306-307.

The Ticketmaster Letter also quotes earlier Farrakhan speeches, in which he blamed Jews for the September 11 terrorist attacks, stated that "false Jews promote the filth of Hollywood," and that Jews "are promoting lesbianism, homosexuality," and are "wicked deceivers of the American people." A-307. The letter also includes hyperlinks to two ADL articles, which enumerate dozens of additional disparaging statements made by Plaintiffs about Jews, including video of Farrakhan speeches. *See* SA-2, SA-78.[4]

The SAC disputes that Farrakhan referred to Jews as "termites" or "satanic," but does not dispute any of the other statements attributed to Farrakhan.

### c.    Saviours' Day Blog Post

The last Challenged Statement comes from the headline of an ADL post about Farrakhan's 2023 Saviours' Day speech: "Farrakhan Predicts Another Holocaust." A-136 ¶ 580; A-352. The headline references Farrakhan's response to a Jewish man, who apparently told him that Jews would "never again" be sent to the ovens. A-355. In his speech, Farrakhan said he corrected the man, telling him that Jews will in fact "burn" again in "an oven" unless they "come with the Messiah." *Id.*

The SAC alleges that Farrakhan and NOI are entitled to $4.8 billion in

---

[4] These hyperlinks do not appear in the version of the Ticketmaster Letter that Plaintiffs filed with their Appendix, *see* A-306, but they do appear in the electronic version of Exhibit KK to the SAC that was filed below, *see* District Court Dkt. 72-40.

damages.  A-166.

### D.     The Proceedings Below

On May 17, 2024, the District Court granted ADL's and Greenblatt's motion to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(1) and (6).[5]  SPA-1.

### 1.     Plaintiffs Lack of Standing To Assert Their First Amendment Claims (Counts 1-5)

The District Court held that Farrakhan and NOI lack standing to assert their constitutional claims against ADL.  SPA-8.  Addressing Morgan State's denial of the plaintiffs' application to hold an event on that campus (Count One), the District Court found that the complaint failed to plead any facts that this alleged injury was "fairly traceable to the ADL."  SPA-12 ("If standing were found to be present here, then the plaintiffs would have standing to sue the ADL for virtually any refusal by a third party to conduct business with the plaintiffs.").

As to the complaint's allegation that the National Strategy to Counter Antisemitism put Farrakhan in danger of arrest and prosecution (Count Two), the District Court correctly found that "nothing in the voluminous [complaint] comes close to demonstrating that [this threat] is 'actual or imminent, as opposed to conjectural or hypothetical.'"  SPA-13 (quoting *Do No Harm v. Pfizer*, 96 F.4th 106,

---

[5] The District Court also dismissed Farrakhan's separate defamation claims against Defendants Simon Wiesenthal Center and Abraham Cooper.  On this appeal, ADL and Greenblatt incorporate by reference the same legal arguments asserted by those appellees in their separate brief.

113 (2d Cir. 2024)).

The District Court further held that the decision by Vimeo to cancel NOI's account (Count Three) was not fairly traceable to ADL, merely because Vimeo cited an ADL article documenting Farrakhan's history of making antisemitic statements. SPA-14. On this point, the Court noted that "[w]hile the pleading of causation requires no more than allegations of *de facto* causality, mere citation by a third party to ADL's general advocacy is insufficient." *Id*. "Any other finding would give the plaintiffs standing to sue ADL whenever a third party injures the plaintiffs and refers to the ADL's publications to justify its decision." *Id.*

The District Court also rejected as mere speculation Plaintiffs' allegations that ADL's alleged relationships with state and local authorities posed a "threat of sanctions" or would chill their desire to hold events in New York (Counts 4-5). "[S]uch 'some day' intentions—without any description of concrete plans, or indeed even any speculation of *when* the some day will be—do not support a finding of the 'actual or imminent injury' that standing requires." SPA-16 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) (emphasis in original)).

The District Court further found that NOI lacked standing to assert injuries as to its members, because Second Circuit law prohibits associational standing as to Section 1983 claims. SPA-17 ("The rights secured by § 1983 are 'personal to those purportedly injured.'" (quoting *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011)).

### 2. Dismissal of Plaintiffs' Claims for Declaratory and Injunctive Relief

The District Court exercised its "broad discretion to decline jurisdiction" over Plaintiffs' claims for declaratory judgment (Counts 10-11), SPA-23, because—since Plaintiffs' claims fail as a matter of law—the requested declaratory relief "would not serve a useful purpose" or " clarify any of the legal relations in issue." SPA-24. The District Court further found that enjoining ADL and Greenblatt from expressing their beliefs about Farrakhan and NOI would constitute an impermissible prior restraint. SPA-24, 25.

### 3. Dismissal of Farrakhan's Defamation Claims (Counts 6-7)

The District Court also dismissed with prejudice Farrakhan's defamation claims. SPA-17-18. It held that all of the Challenged Statements referring to Farrakhan as "antisemitic" were protected opinion, because each of the publications at issue contained "'a recitation of the facts on which they are based' – namely direct quotes from Farrakhan." SPA-21 (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 110-11 (2d Cir. 2017)).

The District Court held that the headline, "Farrakhan Predicts Another Holocaust," was protected opinion because the accompanying article—including Farrakhan's account of telling an old Jewish man that Jews will one day burn in ovens—laid out the basis for the opinion that Farrakhan was predicting "another holocaust." SPA-21.

The Court further found that Plaintiffs failed to plausibly plead that ADL's statements about Farrakhan referring to Jews as "termites" and "satanic" were false, given that they did not dispute Farrakhan's frequent references to "satanic Jews," or that he used the word "termite" when he said:  "When they talk about Farrakhan, call me a hater, you know how they do — call me an anti-Semite.  Stop it, I'm anti-termite!"  SPA-22, 23.

Nor did Farrakhan—who acknowledges he is a public figure—plead "facts that would 'raise a reasonable expectation that discovery will reveal evidence' that [defendants] made the statement[s] with knowledge of or reckless disregard as to the statement's falsity."  SPA-23 (quoting *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015)).  "To the contrary, the SAC itself alleges facts that would dispel any such expectation."  *Id.*

## STANDARD OF REVIEW

A district court's dismissal pursuant to Rules 12(b)(1) and 12(b)(6) is reviewed *de novo*.  *Secs. Inv. Protection Corp. v. BDO Seidman, LLP*, 222 F. 3d 63, 68 (2d Cir. 2000).  A district court's decision not to exercise jurisdiction over a declaratory judgment claim is reviewed "deferentially, for abuse of discretion." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005).  The decision to deny permanent injunctive relief is an act of equitable discretion by the district court, also reviewable on appeal for "abuse of discretion."

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

## SUMMARY OF ARGUMENT

*First*, the claims against ADL for violation of Plaintiffs' First Amendment rights were properly dismissed for lack of standing.  As the District Court found, Farrakhan's speculative fears of arrest, imprisonment and prosecution are too remote to give rise to Article III standing.  He does not identify a single law in any jurisdiction that could be used to prosecute him, much less plausibly plead a substantial likelihood that any adverse action against him is imminent.  Moreover, even if he could, any connection between ADL and those theoretical injuries (or the alleged actions taken against Plaintiffs by Morgan State and Vimeo) are—at best— speculative and highly attenuated.

*Second*, even if Farrakhan and NOI had standing to assert their constitutional claims (and they do not), dismissal should be affirmed on the alternate basis that Plaintiffs fail to state a claim upon which relief can be granted.  There is no cause of action that allows a plaintiff to recover damages against a private entity for violation of constitutional rights under color of federal law.  And the SAC does not plead a Section 1983 claim against ADL, because the mere fact that ADL allegedly engaged in activities such as once providing assistance to the New York State Police, or partnered along with many others with the mayor of New York City to combat hate crimes, does not give rise to the level of state action required to find a private entity

liable under Section 1983. To the contrary, those activities reflect the exercise of ADL's First Amendment rights to advocate to and communicate with public agencies.

*Third*, the District Court did not abuse its discretion in denying Plaintiffs' claims for declaratory judgment. The requested declaratory judgments would serve no useful purpose given that all of Plaintiffs' other claims are meritless, and federal courts are precluded from issuing advisory opinions.

*Fourth*, it was also not an abuse of the District Court's discretion to deny Plaintiffs' claim for injunctive relief. The requested injunction, which seeks to silence ADL's criticism of Farrakhan and NOI, would undoubtedly constitute an unconstitutional prior restraint.

*Fifth*, the District Court properly dismissed Farrakhan's defamation claims. Accusations of antisemitism are protected opinion under well-established New York law, and each of the Challenged Statements are entitled to absolute protection because each was accompanied by a recitation of facts upon which the opinions were based. Moreover, Farrakhan cannot plausibly allege falsity with respect to the statement that he referred to Jews as "termites" and "satanic," because his own quotations of his prior statements establish that he did in fact use those words in reference to Jews. Farrakhan's defamation claims also fail because he cannot plausibly plead actual malice (the applicable fault standard): the SAC does not and

(could not) plead that ADL and Greenblatt do not subjectively believe that Farrakhan is an antisemite.

## **ARGUMENT**

### I. **COUNTS 1-5 WERE PROPERLY DISMISSED FOR LACK OF STANDING**

As the District Court properly found, Counts 1-5 of the SAC fail because Farrakhan and NOI have not satisfied their burden of plausibly pleading any actual or imminent injury that is fairly traceable to ADL. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013) ("the party invoking federal jurisdiction bears the burden of establishing standing") (citation and internal quotation marks omitted); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (plaintiff bears the burden of establishing standing).

#### A. **Applicable Law**

A plaintiff must establish both constitutional standing and prudential standing. *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016). The elements of constitutional standing derive from the "Cases" or "Controversies" requirements of Article III. *Spokeo*, 578 U.S. at 337-38. Those elements are:

> (1) that the plaintiff[s] have suffered an "injury in fact"— that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that there is "a causal connection between the injury and the conduct" of which

the plaintiff complains; and (3) that it is "likely … that the injury will be redressed by a favorable decision."

*Amer. Psychiatric Ass'n*, 821 F.3d at 358 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Courts also apply "prudential principles that bear on the question of standing," which are "judicially self-imposed limits on the exercise of federal jurisdiction." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citation omitted). "Under the prudential standing rule, a plaintiff 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Rolle v. Girardi*, 689 F. App'x 64, 65 (2d Cir. 2017) (quoting *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014)).

"[T]he requirement of injury in fact is a hard floor of Article III jurisdiction []." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 578 U.S. at 340. Relevant here, speculative "[a]llegations of possible future injury do not satisfy the requirements of Art[icle] III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). *See also McMorris v. Carlos Lopez & Assocs.*, 995 F.3d 295, 300 (2d Cir. 2021) ("[T]he Supreme Court has made clear that 'allegations of possible future injury' or even an 'objectively reasonable likelihood' of future injury are insufficient to confer standing.") (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013)). "Rather, a future injury constitutes an Article III injury in fact only 'if the threatened injury is **certainly impending**, or there is a **substantial** risk that the harm will occur.'"

19

*McMorris*, 995 F.3d at 300 (emphasis added) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). An alleged future injury is "too speculative" to confer Article III standing where it "require[s] the court to 'engage with [an] '*attenuated chain of possibilities*[.]'" *Id.* (quoting *Clapper*, 568 U.S. at 414 n.5) (emphasis added).

The "causal connection" element of Article III standing requires a showing that the alleged injury is "fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court." *Ateres Bais Yaakov Academy v. Town of Clarkstown*, 88 F.4th 344, 352 (2d Cir. 2023) ("*ABY Academy*") (quoting *Lujan*, 504 U.S. at 560-61) (cleaned up). Though this Court has observed that the standard is not "onerous," it nevertheless requires "more than 'mere speculation about the decisions of third parties[].'" *Id.* (quoting *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019)). *See also FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 383 (2024) ("The causation requirement precludes speculative links—that is, where it is not sufficiently predictable how third parties would react to government action or cause downstream injury to plaintiffs.") (internal citation and quotation marks omitted). "The allegations of fact must plausibly support a '*substantial likelihood*' that the plaintiff's injury was the consequence of the defendant's allegedly unlawful actions (and that prospective relief could mitigate the harm)." *Citizens for Resp. & Ethics in Washington v. Trump*,

953 F.3d 178, 191 (2d Cir. 2019) ("*CREW*") (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976)), *vacated on other grounds*, 141 S. Ct. 1262 (2021).

### B.     Application

#### 1.     Count One

##### a.     The SAC Does Not Plausibly Plead That Morgan State's Decision Was Fairly Traceable to ADL

Count 1 does not plausibly plead that Morgan State's denial of Farrakhan's application to hold an event was fairly traceable to ADL.   To the contrary, "administrators of Morgan State" (not ADL) denied Plaintiffs' event request.   A-76 ¶ 279.   *See Spear*, 520 U.S. at 167 (standing has not been established if the injury complained of is "th[e] result [of] the *independent* action of some third party not before the court" (emphasis added) (citing *Lujan*, 504 U.S. 560-61)).   And while the SAC alleges "[u]pon information and belief" that ADL pressured Morgan State, that kind of conclusory speculation falls far short of satisfying Farrakhan's burden to plausibly plead a "***substantial likelihood***," *CREW*, 953 F.3d at 191 (emphasis added), that ADL or Greenblatt had a "determinative or coercive effect" on Morgan State's decision to deny Farrakhan's request to hold an event on their campus.  *Spear*, 520 U.S. at 169.  *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (the Court need not credit conclusory legal allegations or "'naked assertion[s]' devoid of 'further factual enhancement.'").

Farrakhan's argument to the contrary ironically relies on a 1994 ADL publication, in which ADL criticized the strategy of dogmatically demanding that organizations refuse to host Farrakhan. Appellants' Br. at 9. Instead, ADL recommended urging those who give Farrakhan a platform to insist that he act responsibly. A-186. The notion that this 1994 publication somehow gives rise to a "**substantial likelihood**" that—some 30 years later—ADL coerced Morgan State in denying Farrakhan's event request is beyond implausible. *CREW*, 953 F.3d at 191 (emphasis added).

### 2. Count Two

#### a. Farrakhan's Alleged Fear of Arrest, Prosecution, and Imprisonment Is Implausible Conjecture

Count Two of the SAC alleges that "upon information and belief," ADL intends for the National Strategy to Counter Antisemitism to "provide the legal justification to facilitate the imminent arrest, prosecution, and likely imprisonment" of Farrakhan. A-84 ¶ 326. Farrakhan alleges implausibly that these are "imminent" threats that infringe his free exercise of religion. *Id.*; Appellants' Br. at 11.[6] But as the District Court correctly found, "nothing in the voluminous SAC comes close to demonstrating that the alleged threat of prosecution of Farrakhan is 'actual or

---

[6] He further alleges that ADL's criticism of him "is reminiscent of 2,000 years ago when certain Jews of that day could not bear to hear the truth that Jesus spoke." *See* A-85 ¶ 335.

imminent, as opposed to conjectural or hypothetical.'" SPA-13 (quoting *Do No Harm*, 96 F.4th at 113).

Nothing in Plaintiffs' appellate brief comes close to making the required showing, either. Instead, Farrakhan contends that mere "fear or anxiety of future harm" is sufficient to plead an injury-in-fact. Appellants' Br. at 11 (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)). That is not the law. To confer standing, an alleged injury cannot be "abstract . . . conjectural or hypothetical." *Denney*, 443 F.3d at 264 (citation and internal quotation marks omitted). *See also Hedges v. Obama*, 724 F.3d 170, 188-89 (2d Cir. 2013) (holding that even so-called fear-based standing requires "an imminent threat of future harm or a present harm incurred in consequence of such a threat"); *Green v. Jackson*, 36 F. App'x 663, 668 (2d Cir. 2002) (holding that plaintiff's purported fear that he "will again have negative encounters" with the police is "too speculative to satisfy the standing requirement").

Significantly, a "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Clapper*, 568 U.S. at 410. The "chain of possibilities" on which Farrakhan relies here is attenuated, at best. It includes: the National Strategy to Combat Antisemitism being used imminently as a basis for enacting a criminal law proscribing antisemitism; the government using that statute to unjustly arrest

23

and prosecute Farrakhan; and Farrakhan being imprisoned.  Farrakhan certainly does not allege that any of those things have happened since he originally filed this lawsuit nearly 11 months ago.  And as the District Court noted, the National Strategy to Counter Antisemitism states specifically that it "does not purport to alter or preempt existing statutes, regulations, policies, or the requirements of the Federal, state or local agencies that enforce them."  SPA-13 (quoting A-219).  Nevertheless, Farrakhan (who lives and works in Chicago, Illinois, A-23 ¶¶ 14-15) alleges that the State of New York has adopted the National Strategy to Counter Antisemitism "as a guiding document" to "potentially" "alter" criminal laws.  Appellants' Br. at 13; A-91 ¶ 369.  In support of that statement, the SAC cites a press release issued by New York Governor Kathy Hochul, titled, "Governor Hochul Announces Comprehensive State Action to Combat Antisemitism."  *See* A-326-332.  But while the press release discusses initiatives like streamlining victim compensation, A-329, preventing hate crimes, *id.*, and anti-hate crime seminars organized by the New York State Police, A-330, the press release makes no mention of "altering" existing criminal law to prosecute those deemed "antisemitic."  Indeed the SAC fails to identify a single criminal statute in New York (or any other jurisdiction) that might form the basis for Farrakhan's "imminent" arrest, prosecution, and imprisonment.  A-84 ¶ 326.  The SAC does not come close to making the required showing that such a result is "certainly impending, or [that] there is a substantial risk that the harm will occur."

*McMorris*, 995 F. 3d at 300 (citation omitted).

Farrakhan suggests that, even absent arrest or prosecution, "non-binding recommendations" by a governmental entity (like those in the National Strategy to Combat Antisemitism) can give rise to an injury-in-fact for standing purposes. Appellants' Br. at 14 (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)). *Bantam Books* does not remotely support that dubious assertion. In *Bantam Books*, the Supreme Court held that book publishers had standing to assert injury to their First Amendment rights where a state Commission to Encourage Morality in Youth sent dozens of notices to a book distributor, identifying certain books deemed to be "objectionable." *Bantam Books*, 372 U.S. at 61-62. The publishers alleged an injury-in-fact, not because of "non-binding recommendations," but because the actions taken by the Commission *actually* "impaired sales of the listed publications." *Id.* at 64 n.6. The Court also found that after receiving notices from the Commission, the distributor was visited by the local police "to learn what action he had taken." *Id.* at 63. Farrakhan has not make any comparable allegations in this case.

Farrakhan cites two other cases for the proposition that actual arrest is not a prerequisite for challenging government action. *See* Appellants' Br. at 17 (citing *Susan B. Anthony List*, 573 U.S. 149 ("*SBA*"); *Steffel v. Thompson*, 415 U.S. 452 (1974)). But ADL has never argued that it is, and both cases illustrate why the allegations here do not remotely establish standing. In *SBA*, the Court held that an

advocacy organization had standing to challenge Ohio's "false statement law" where there was a "substantial" threat that the plaintiff would be subjected to burdensome proceedings before the commission tasked with enforcing the law, and those proceedings were "backed by the additional threat of criminal prosecution." 573 U.S. at 166. *See also id.* at 164 (noting that the commission had already found "probable cause" that the plaintiff violated the statute at issue, and "there is a history of past enforcement here.").

In *Steffel*, an anti-war protestor was held to have standing to challenge a state criminal trespass law where he had twice been told by police that he would be prosecuted if he distributed anti-war handbills at a shopping center, and the plaintiff's friend had already been prosecuted for the same activities. 415 U.S. at 459 ("[T]he petitioner's concern with arrest has not been chimerical.") (citation and internal quotation marks omitted).

By contrast, Farrakhan's fear of adverse action in this case is entirely "chimerical." *Steffel*, 415 U.S. at 459. Unlike the plaintiffs in *Bantam Books,* Farrakhan does not allege, for example, any coercive contacts from law enforcement. And unlike the plaintiffs in *SBA* and *Steffel*, Farrakhan does not challenge any particular law, and he has not been explicitly threatened with arrest or prosecution for any constitutionally-protected activities. His alleged injuries are purely speculative.

### b.     Farrakhan's Alleged Injury Is Not Fairly Traceable to ADL

Even if Farrakhan could plausibly plead a substantial likelihood of "imminent arrest, prosecution, [] likely imprisonment," A-84 ¶ 326, the SAC fails to plausibly allege any nonspeculative causal link between that imminent injury and ADL's advocacy efforts. *See FDA*, 602 U.S. at 383 ("The causation requirement precludes speculative links [].").

Farrakhan's arguments to the contrary fail. He cites the Ticketmaster Letter as "evidence of [ADL's] desire and willingness" to infringe his freedom of religion. A-84 ¶ 327. But alleged intent is not the same thing as a "substantial likelihood that the plaintiff's injury was the consequence of the defendant's allegedly unlawful actions." *CREW*, 953 F. 3d at 191. Indeed the Ticketmaster Letter explicitly stated that ADL was "not requesting any particular action from [Ticketmaster] as it relates to your commercial activities," A-306, and Plaintiffs allege that ADL's effort was ultimately "not successful" since Ticketmaster continued selling tickets to their event. A-81 ¶¶ 311-12.

Also unpersuasive is Farrakhan's speculation that ADL's advocacy for adoption of the National Strategy to Combat Antisemitism was intended to bring about Farrakhan's "imminent arrest, prosecution, and likely imprisonment." A-84 ¶ 326. Notably, while the 150-page SAC is filled with examples of ADL's criticism of Farrakhan and the hateful views he espouses, the SAC does not identify a single

instance where ADL called directly for Farrakhan's criminal arrest or prosecution. The causal link here is not simply tenuous; it is nonexistent.

### 3.    Count Three

Vimeo's decision to cancel NOI's account was also not fairly traceable to ADL. *See* SPA-14. Again, Vimeo (not ADL) cancelled NOI's streaming account, A-89 ¶ 353, and the SAC is devoid of any non-conclusory, plausible allegation that could support a "substantial likelihood" that Vimeo's decision was the consequence of any action taken by ADL. *CREW*, 953 F. 3d at 191.

NOI suggests that ADL must have coerced Vimeo to cancel its account, because ADL once persuaded a completely different media platform—Foxsoul TV—not to air one of Farrakhan's speeches. A-88 ¶ 348; Appellants' Br. at 15. This is precisely the kind of "mere speculation about the decisions of third parties" that is insufficient to confer Article III standing. *ABY Academy*, 88 F.4th at 352.

NOI also alleges that ADL is responsible for the Vimeo cancellation, because Vimeo's cancellation notice included a hyperlink to an ADL article about NOI's hate speech. A-89 ¶ 354. This too falls far short of plausibly pleading that ADL took some action to cause Vimeo's decision. As the District Court explained, "[a]ny other finding would give the plaintiffs standing to sue ADL whenever a third party injures the plaintiffs and refers to the ADL's publications to justify its decision." SPA-14. "The law of standing requires more linkage between a defendant's activities and a

plaintiff's injury." *Id.* The SAC fails to establish standing with respect to Count Three.

### 4. Counts Four and Five

The District Court also found that none of the allegations asserted by NOI in Counts Four and Five state any injury-in-fact, much less one fairly traceable to ADL.

### a. NOI's alleged injuries are neither concrete nor particularized

Count Four of the SAC alleges that, as a result of ADL's advocacy, NOI has suffered impairment of its reputation, threats of sanctions, and a chilling effect on its desire to hold events in New York. A-108-109. Count Five alleges similar injuries, including that NOI's freedom of association has been chilled due to "unlawful surveillance" by ADL. A-117-118. The District Court correctly found that each of these alleged injuries are entirely speculative, lacking in specificity, and not "cognizable." SPA-16.

For example, NOI's alleged reputational harm relies on an attenuated chain of possibilities, which "does not suffice for standing purposes." SPA-17.[7] As the District Court explained:

> The SAC alleges that ADL's "historical and contemporary

---

[7] *See also Floyd v. City of N.Y.*, 302 F.R.D. 69, 119-20 (S.D.N.Y. 2014) ("Claiming reputational harm is not an exception or loophole that excuses litigants from satisfying Article III's injury criteria," *i.e.*, that an injury-in-fact must be "concrete and particularized."), *aff'd in relevant part*, 770 F.3d 1051 (2d Cir. 2014) (per curiam).

> actions of spying on and surveilling the Nation of Islam, coupled with its 'partner [ship] with the City of New York to guide its law enforcement departments in the apprehension and prosecution of people it determines [are] using 'hate,' serve[ ] to diminish the Nation of Islam's reputation in the community." In other words, the alleged reputational harm will occur only if NOI or its members commit and are then prosecuted for hate crimes.

*Id.* "Because the injury alleged relies on speculative future actions by plaintiffs themselves along with New York State and City officials, it is not the 'predictable effect' of ADL's own conduct." *Id.* (quoting *ABY Academy*, 88 F.4th at 352).

NOI now argues that its allegations focus on ADL's "contemporary actions of spying." Appellants' Br. at 18. But the only specific alleged act of "spying" with respect to Plaintiffs—or indeed anyone—allegedly happened in 1942. A-95 ¶ 397. NOI's allegations of "contemporary" spying by ADL are conjectural and purely speculative.

As to the alleged "threat of sanctions," the District Court correctly described NOI's allegations as "'some day' intentions—without any description of concrete plans, or indeed even any speculation of *when* the some day will be." SPA-16 (emphasis in original). Such allegations "do not support a finding of the 'actual or imminent injury' that standing requires." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)). On appeal, NOI candidly admits that it is a "feeder of antisemitism," and as such, could potentially be "targeted" by "anti-hate" initiatives announced by the governor of New York and the mayor of New York City.

Appellants' Br. at 18-19. Again, NOI's failure to identify any specific threat (and the fact that no government action has actually been taken against NOI, in the many months since the governor and mayor endorsed the anti-hate initiatives at issue) lay bare the utterly conjectural and hypothetical nature of NOI's imagined injuries.

NOI's allegations about "chilling effects" fare no better. Where a plaintiff alleges a "chilling effect," "the Court must ascertain that that fear is sufficiently concrete and immediate to constitute a present injury to plaintiff's First Amendment rights, rather than a speculative or illusory allegation of future harm." *Nitke v. Ashcroft*, 253 F. Supp. 2d 587, 596 (S.D.N.Y. 2003). "Thus, plaintiffs must 'proffer some objective evidence to substantiate [their] claim that the challenged conduct has deterred [them] from engaging in protected activity.'" *Id.* (quoting *Bordell v. Gen. Elec. Co.*, 922 F.2d 1057, 1061 (2d Cir. 1991)). Here, NOI claims that there is a "reasonable fear and/or likelihood" that state and local efforts to combat antisemitism will chill their wearing of "readily identifiable religious garments," A-111 ¶ 484, their "desir[e] to attend mosque meetings," A-117 ¶ 519, and the practice of "the registered men, [and] occasionally the registered women" to go "door-to-door offering" to sell NOI's newspaper, A-113 ¶ 491. Again, none of this pleads an injury-in-fact, because NOI fails to "proffer some ***objective evidence*** to substantiate [their] claim that the challenged conduct has [actually] deterred [them] from engaging in protected activity." *Nitke*, 253 F. Supp. 2d at 596 (emphasis added)

(quoting *Bordell*, 922 F.2d at 1061). Instead, as with all of the other constitutional claims in the SAC, NOI offers nothing more than conclusory speculation.

The cases on which NOI relies for support are easily distinguishable. *See John v. Whole Foods Mkt. Grp., Inc.*, 858 F. 3d 732, 737 (2d Cir. 2017) (finding that plaintiff pleaded a plausible, nontrivial injury against grocer where he alleged he was a regular shopper at the store, and a government investigation found that 89 percent of the grocer's packages failed to satisfy federal labeling standards); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) (holding in a patent license dispute that plaintiff had standing to sue for declaratory judgment before breaking or terminating license agreement where there was substantial likelihood that defendant would enjoin sales of plaintiff's pharmaceutical drug). Unlike the plaintiffs in *John* and *MedImmune*, NOI has not come close to plausibly alleging that it faces a substantial likelihood of any specific constitutional injury as a result of state and local initiatives to combat antisemitism.

Since NOI cannot identify any "actual, non-speculative chilling effect," *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002), it fails to plausibly allege any basis for standing with respect to Counts 4-5.

> **b.** **The SAC pleads no causal link between ADL and their alleged injuries**

As with Count Two, Counts Four and Five of the SAC also fail to allege any plausible connection between ADL and NOI's alleged injuries. The SAC merely

alleges that ADL previously gave presentations to the New York State Police, A-93-95 ¶¶ 380, 389-91, and that ADL collected and transmitted data on hate crimes to the New York State Division of Human Rights. A-92 ¶ 376. The SAC further speculates "on information and belief . . . [that] ADL will be the primary agent used by the State of New York to coordinate, implement, and oversee [state action] to combat 'antisemitism.'" *Id.* ¶ 375. None of these allegations plausibly allege a "substantial likelihood" that any specific action taken by ADL has caused NOI any actual or imminent injury. *CREW*, 953 F.3d at 191.

NOI's appellate brief does little to bolster their standing argument with respect to Counts Four and Five. It merely contends that "ADL is 'the basis for the threats made by the governor and the mayor." Appellants' Br. at 19. But NOI identifies no specific "threats made by the governor and the mayor" against NOI beyond their generalized announcements of support for initiatives to combat antisemitism. NOI's speculation that, as "feeders of antisemitism" it could be a "logical and legitimate" target of state and local initiatives against antisemitism is far too vague and attenuated to support Article III standing.

### C. NOI Lacks Prudential Standing To Assert Claims For Its Members (Counts 4 and 5)

As the District Court found, NOI also lacks standing to assert Section 1983 claims on behalf of its members. SPA-17 ("'[A]n organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C.

§ 1983,' because the rights secured by § 1983 are 'personal to those purportedly injured.'") (quoting *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011)). *See also League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984) (same). Indeed the SAC fails to name a single NOI member whose First Amendment rights have been chilled, much less provide any evidence of those circumstances. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 174 (2d Cir. 2005) ("[A] plaintiff normally lacks associational standing to sue on behalf of its members where 'the fact and extent of injury would require individualized proof.'") (quoting *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004)).

NOI concedes that under the law of this Circuit, "organizations do not have standing to assert the rights of their members in § 1983 cases." Appellants' Br. at 26. Nevertheless, NOI urges this Court to overturn this precedent on the grounds that (1) NOI's members "are in every practical sense identical" since they all wear "Muslim garments . . . bow-ties and suits," and (2) and because requiring NOI's members to reveal their identities would infringe those members' right to freedom of association. *Id.* at 27-28. These arguments lack any merit and should be rejected.

## II. DISMISSAL OF COUNTS 1-5 SHOULD BE AFFIRMED ON THE ALTERNATE GROUND THAT THEY FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even if Plaintiffs did have standing to assert Counts 1-5 (and they do not),

dismissal of Plaintiffs' constitutional claims should be affirmed on the alternate ground that they fail to state a claim upon which relief can be granted.[8]

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Twombly*, 550 U.S. at 570) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In applying this standard, the Court need not credit conclusory legal allegations or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## A.    Plaintiffs Fail To State a *Bivens* Claims (Counts 1-3)

When a plaintiff alleges violations of constitutional rights under color of federal law, such claims are construed as arising under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Iqbal*, 556 U.S. at 675-76 ("[*Bivens*] is the federal analog to suits brought against state officials under

---

[8] The District Court did not reach ADL's 12(b)(6) arguments with respect to Counts 1-5, but this Court may affirm dismissal "on any ground with support in the record, even if it was not the ground relied on by the District Court." *Palmer v. Occidental Chem. Corp.*, 356 F.3d 235, 236 (2d Cir. 2004).

[42 U.S.C. § 1983].") (citation omitted).[9]

Putting aside the fact that the SAC pleads no constitutional violation by ADL, Counts 1-3 fails to state a *Bivens* claim for two other reasons. First, as a matter of law, private entities, regardless of whether alleged to have acted under color of law, cannot be held liable for damages under *Bivens*, which is limited to claims against *individual* federal officials. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 70 (2001) (declining to infer a *Bivens* remedy "for damages against private entities acting under color of federal law" and explaining that "[t]he purpose of *Bivens* is to deter *individual federal officers* from committing constitutional violations") (emphasis added); *Shapiro v. Holdman*, No. 14 Civ. 10119 (NRB), 2016 WL 4371741, at *9 (S.D.N.Y. Aug. 15, 2016) ("Relying on *Malesko*, courts have held that *Bivens* claims may not be advanced against a corporate entity."), *aff'd*, 696 F. App'x 532 (2d Cir. 2017). *See also Larry Carter Ctr. v. Catholic Charities*, No. 5:15-CV-0597 (LEK/ATB), 2015 WL 4067559, at *5-6 (N.D.N.Y. July 2, 2015) (*Malesko* precludes *Bivens* liability against nonprofit organization).

---

[9] In the proceedings below, Farrakhan and NOI admitted that the SAC does not plead a *Bivens* claim. Pls' Opp. to Mot. to Dismiss (Dkt. 80) at 16. There is no other cause of action that would entitle them to relief. *See Cohen v. Trump*, No. 23-35, 2024 WL 20558, at *2 (2d Cir. Jan. 2, 2024) ("Congress has never provided a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government.") (internal citation, quotation marks and alteration omitted), *pet. for cert. docketed*, No. 24-41 (U.S. July 15, 2024).

Second, even if ADL could be held liable under *Bivens* (and it cannot), Counts 1-3 fail for the independent reason that the constitutional claims Plaintiffs allege all arise under the First Amendment, and *Bivens* remedies do not extend to alleged First Amendment injuries. *See, e.g.*, *Iqbal*, 556 U.S. at 675 ("[W]e have not found an implied damages remedy under the Free Exercise Clause.").[10]

## B. Plaintiffs Fail to State a Section 1983 Claim (Counts 4-5)

ADL also cannot be held liable for acting under color of *state* law pursuant to Section 1983 (Counts 4-5). As this Court has explained, holding private entities liable for constitutional violations is a high bar:

> A private entity "can qualify as a state actor in a few limited circumstances," such as "(i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity."

*Peralta v. 32BJ SEIU*, 21-1638, 2022 WL 792164, at *1 (2d Cir. Mar. 16, 2022) (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808-09 (2019)).

The SAC fails to plausibly allege that ADL performed any exclusive function

---

[10] *See also Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). Indeed, the Supreme Court has repeatedly declined to extend the implied *Bivens* remedy beyond claims for alleged violations of the Fourth Amendment, wrongful termination based on gender discrimination, and Eighth Amendment violations committed by prison officials. *Cohen*, 2024 WL 20558, at *2.

of the state, or that it acted jointly with Governor Hochul or Mayor Adams to target NOI. At most, the SAC alleges that, in the past, ADL helped train the State Police to investigate hate crimes, and that ADL has assisted law enforcement with "data collection." A-94-95 ¶¶ 389-398. But NOI fails to allege any tangible way in which this even relates to them.[11] Even if ADL were *currently* assisting with such training and data collection (Plaintiffs allege this to be true solely "[u]pon information and belief," A-94 ¶ 385; A-103 ¶ 438), the mere fact that a "private entity performs a function that serves the public does not transform its conduct into state action." *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996). *See also Rendell–Baker v. Kohn*, 457 U.S. 830, 840-41 (1982) (holding that acts of private contractors "do not become acts of the government by reason of their significant or even total engagement in performing public contracts"). "And while delegation of a state's entire police power to a private entity may turn that entity into a state actor, that is not what happened here." *Miller v. Vohne Liche Kennels, Inc.*, 600 F. App'x 475, 477 (7th Cir. 2015) (defendant's training of police canine is not state action subject to § 1983 claim). Conclusory allegations that a defendant cooperated with the police to injure the plaintiff are simply "insufficient to establish the required nexus" under Section

---

[11] The SAC suggests that these activities could involve "spying" on the ADL, but as Plaintiffs admit, the only specific alleged act of "spying" by ADL against anybody occurred in 1942. *See* A-95 ¶ 397.

1983. *Dunn v. Carrier*, 137 F. App'x 387, 389 (2d Cir. 2005).

NOI also alleges that ADL receives federal funding from the National Strategy to Counter Antisemitism. A-51 ¶ 160. The exhibits NOI cites in support of this allegation do not come close to plausibly supporting this claim, which is patently false.[12] But even if they did, "the mere fact that an entity receives public funding is insufficient to attribute its actions to the state." *Bailey v. N.Y. Law Sch.*, No. 19-3473, 2021 WL 5500078, at *5 (2d Cir. Nov. 24, 2021) (citing *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 268 (2d Cir. 2014)), *cert. denied*, 142 S. Ct. 1685 (2022).

Likewise, Mayor Adams' passing reference to working with "the ADL and other organizations" to "create environments where hate cannot grow in our cities," A-372, does not satisfy the high bar required to hold a private actor liable for constitutional violations, *Lurch*, 2021 WL 1226927, at *3, any more than it transforms the individual rabbis the Mayor also mentioned in the same remarks into government chaplains. Since Plaintiffs do not plausibly plead that ADL did anything under color of state law, their Section 1983 claims should be dismissed. Indeed, as noted above, it is *NOI* that seeks in this case to punish *ADL* for exercising its First

---

[12] NOI attached as an exhibit to the SAC a letter from ADL to the U.S. Office of Management and Budget, advocating for funding to 30 federal programs spread among numerous federal agencies. SA-40. The letter does not request (much less "demand") any funding for ADL.

Amendment rights. *See, e.g.*, *United Mine Workers v. Illinois Bar Assoc.*, 389 U.S. 217, 222 (1967) (the right "to petition for a redress of grievances [is] among the most precious of liberties safeguarded by the Bill of Rights"); *Gagliardi v. Village of Pawling*, 18 F. 3d 188, 194 (2d Cir. 1994) ("The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment."). A similar effort by a NOI-related plaintiff was squarely rejected in *X-Men Security, Inc. v. Pataki*, 196 F.3d 56 (2d Cir. 1999). In that case, the plaintiff was a company that primarily employed NOI members. *Id.* at 60. It sued two public officials whose criticism of the plaintiff's connection to NOI led to the cancellation of the plaintiff's contract to provide security services for a housing complex in Brooklyn. *Id.* This Court affirmed dismissal of the plaintiffs' claims, holding that "the First Amendment gives any citizen the right to petition the government," *id*. at 72, and that the officials' advocacy against the plaintiff was nonactionable, because "speech by persons who are not decisionmakers and who merely engage in advocacy without threats, intimidation, or coercion is protected by the First Amendment." *Id.* at 71. *See also Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33, 35 (2d Cir. 1983) (holding that restraining public criticism of the plaintiff "would stand the Constitution on its head").

For all these reasons, the effort by Farrakhan and NOI to transform ADL's advocacy against antisemitism into violations of their constitutional rights should be

rejected, and dismissal of Counts 1-5 affirmed on this alternate ground.

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE CLAIMS FOR DECLARATORY JUDGMENT (COUNTS 11-12)

This District Court was correct to decline jurisdiction over the SAC's claims for a declaratory judgment.

This Court has identified five factors to guide district courts in deciding whether to exercise jurisdiction in declaratory judgment cases:

> (i) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (ii) whether a judgment would finalize the controversy and offer relief from uncertainty; (iii) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (iv) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (v) whether there is a better or more effective remedy.

*Connecticut Citizens Defense League, Inc. v. Thody*, No. 23-724-cv, 2024 WL 177707, at *7 (2d Cir. Jan. 17, 2024) (citing *N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006)).

Since all of the other claims in the SAC fail as a matter of law, the District Court properly held that no useful purpose would be served by issuing a judicial declaration that ADL is a "quasi-governmental entity of the federal government" (Count 11), or that the false accusation of "antisemitism" should be added to the categories of defamation per se recognized under New York law (Count 10). SPA-

24.

In fact, the point is moot: even if ADL *were* a federal agency, it would be immune from suit under *Bivens*, which applies only to individual federal officers. *Malesko*, 534 U.S. at 70. Count 11 seeks nothing more than an impermissible advisory opinion, because Plaintiffs have stated no plausible violations of any rights that could be impacted by such a declaration. *See KM Enters., Inc. v. McDonald*, 518 F. App'x 12, 13-14 (2d Cir. 2013) (holding that request for declaratory judgment was "properly rejected, as such a judgment would constitute an advisory opinion, which federal courts lack authority to render").

Moreover, as noted above, there is absolutely no plausible basis for showing that ADL is a "quasi-governmental entity of the federal government." Mere allegations that ADL provides information to the FBI, or that it seeks and receives federal funding, are insufficient to transform it into a "quasi-governmental" agency, *see supra* at 38-39, particularly since there is no allegation that ADL has surrendered control of its direction to the federal government. *See, e.g.*, *Gilliard v. N.Y. Pub. Library Sys.*, 597 F. Supp. 1069, 1074-75 (S.D.N.Y. 1984) (holding that the New York Public Library is not a "quasi-governmental" entity subject to Section 1983 liability, because it "retains general control over the direction and management of its own affairs").

The request for a judicial declaration changing the definition of defamation

per se under New York law is also meritless (and frivolous). *See Global Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 101 (2d Cir. 2021) ("we are bound to apply New York law as determined by the New York Court of Appeals").

## IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE CLAIM FOR AN INJUNCTION (COUNT 12)

The District Court properly denied as an impermissible prior restraint the requested injunction to silence ADL's criticism of Farrakhan and ADL. SPA-24, 25 ("Prior restraints constitute 'the most serious and the least tolerable infringement' on our freedoms of speech.") (quoting *Citizens United v. Schneiderman*, 882 F. 3d 374, 386 (2d Cir. 2018)). Indeed, the Supreme Court "has *never* upheld a prior restraint []." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 227 (6th Cir. 1996) (emphasis added), and there is a "heavy presumption" against the constitutional viability of a prior restraint. *Metro. Opera Ass'n v. Local 100, Hotel Emps. & Rest. Emps. Int'l*, 239 F.3d 172, 176 (2d Cir. 2001).

Moreover, as a private nonprofit corporation, ADL is "not a state actor subject to the First Amendment." *Halleck*, 587 U.S. at 819. Farrakhan and NOI contend that the requested injunction is needed to prevent ADL's "interference with [their] contractual relationships." Appellants' Br. at 51. But there is not a single allegation in the SAC that plausibly supports that, and neither Farrakhan nor NOI assert a claim for tortious interference with contract. The District Court's dismissal of the proposed injunction should be affirmed.

43

## V. THE DISTRICT COURT'S DECISION TO DISMISS FARRAKHAN'S DEFAMATION CLAIMS (COUNTS 6-7) SHOULD BE AFFIRMED

Farrakhan's defamation claims were also properly dismissed by the District Court. *See* SPA-18, 23. Each of the Challenged Statements are, as a matter of law, either protected opinion or substantially true. The SAC also fails to plausibly plead actual malice, the applicable fault standard.

### A. Applicable Law

The parties agree that New York law controls Farrakhan's defamation claims. *See* SPA-19 at n.3. Under New York law, the elements of defamation are: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Cooper v. Franklin Templeton Invs.*, No. 22-2763-cv, 2023 WL 3882977, at *4 (2d Cir. June 8, 2023).

"Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Rapaport v. Barstool Sports Inc.*, No. 22-2080-cv, 2024 WL 88636, at *3 (2d Cir. Jan. 9, 2024) (citation omitted). In fact, protection for opinion is even greater under New York law than under the First Amendment. *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 178 (2d Cir. 2000); *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 152 (1993) (noting New York's "more flexible" and "decidedly more [speech] protective" test). Where (as here) a statement of opinion "'is accompanied

44

by a recitation of the facts upon which it is based' or does not imply that it is based on undisclosed facts," *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014) (citing *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289-90 (1986)), it is considered to be "pure opinion [subject to] ***absolute*** constitutional protection under the New York Constitution," *Celle*, 209 F. 3d at 178 (emphasis added) (internal citation omitted).

In determining whether a challenged statement is protected opinion, New York courts consider several factors, including:

> (1) whether the specific language in issue has a precise meaning which is readily understood . . . ;
>
> (2) whether the statement is capable of being objectively characterized as true or false . . . ;
>
> (3) the full context of the communication in which the statement appears; and . . .
>
> (4) the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Celle*, 209 F.3d at 178-79 (citation omitted). Determining whether a statement is nonactionable opinion is a threshold question of law for the court. *Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*, 759 F.2d 219, 223-24 (2d Cir. 1985), and decisions to grant

pre-answer Rule 12(b)(6) dismissal motions are routinely affirmed on this basis.[13]

Even if a statement is determined to be one of fact, "[b]ecause falsity is an element [of a defamation claim], in order to survive a motion to dismiss, the complaint must [also] plead facts that, if proven, would establish that the defendant's statements were not substantially true." *Cooper*, 2023 WL 3882977, at *3 (citation and internal quotation marks omitted). Courts routinely dismiss defamation claims at the pleadings stage where the facts alleged in the complaint demonstrate the substantial truth of the challenged statement.[14] Defamation law "concentrates upon substantial truth," and a challenged statement cannot be materially false "so long as the substance, the gist, the sting, of the libelous charge be justified." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516-17 (1991) (citation and internal quotation marks omitted). *See also Guccione v. Hustler Mag., Inc.*, 800 F.2d 298, 301-02 (2d Cir. 1986) ("It's not necessary of course that a statement be literally true. The test is whether the statement, as it was published, had a different effect on the mind of the reader than the actual literal truth.").

---

[13] *See, e.g.*, *Cooper*, 2023 WL 3882977, at *4; *Cummings v. City of N.Y.*, No. 21-1380, 2022 WL 2166585, at *3 (2d Cir. June 16, 2022); *Torain v. Liu*, 279 F. App'x 46, 46 (2d Cir. 2008).

[14] *See, e.g.*, *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017); *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012); *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 369 (S.D.N.Y. 1998).

Finally, where (as here) there is no dispute that the plaintiff is a public figure,[15] the applicable fault standard that a defamation plaintiff must plausibly plead is actual malice, *i.e.*, that the challenged statement was made "with knowledge that [it] was false, or with reckless disregard of whether it was false or not." *Oakley v. Dolan*, 833 F. App'x 896, 899-900 (2d Cir. 2020) (citation omitted).[16] *See also* SPA-19 ("At the motion to dismiss stage, a plaintiff must 'plead . . . enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice.'") (quoting *Biro*, 807 F.3d at 544).

## B. The Challenged Statements are Nonactionable Opinion

Farrakhan claims that he is not an antisemite because he "has never harmed a hair on the head of any Jewish person," A-31 ¶ 63; admires violinist Jascha Heifetz, A-55 ¶ 189; and has "acknowledged the existence of 'good Jews,'" A-56 ¶ 191(b), A-60 ¶ 191(j), as opposed to all the other "Satanic" ones, A-135 ¶ 578. In announcing why Plaintiffs supposedly filed this case, Farrakhan further refined his

---

[15] Farrakhan admits that he is a "public figure." A-79 ¶ 298. Even if he were not, he would still be required to plead actual malice under New York law, which provides that even private figures must prove actual malice in defamation cases like this one involving "an issue of public interest." N.Y. Civ. Rights Law § 76-a(1)(a)(2).

[16] Orders to dismiss defamation claims for failure to plead actual malice are routinely affirmed. *See Brimelow v. N.Y. Times Co.*, No. 21-66-cv, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021), *cert. denied*, 142 S. Ct. 1210 (2022); *Oakley*, 833 F. App'x at 899-900; *Biro v. Condé Nast*, 807 F.3d 541, 545-46 (2d Cir. 2015).

definition of antisemitism, noting that in his preachings he has never actually "called for the death of those who call themselves Jews," even though "boy, I have thought about such prayers, but I have never uttered them." *See* https://media.noi.org/watch/minister-farrakhan-statement-adl-lawsuit (12:04-12:10; 12:30-12:55).

The First Amendment protects Farrakhan's right to believe that it is not antisemitic to contemplate whether to pray for Jews to die. But it does not permit him to use this Court to sanction those who condemn such views as bigotry. To the contrary, the law squarely protects ADL's right to call out Farrakhan as one of this country's most notorious antisemites; as this Court has repeatedly found, accusations that a person is "antisemitic" or "racist" are squarely protected as opinion under New York law. *See Rapaport*, 2024 WL 88636, at *3 (collecting cases). *See also Cooper*, 2023 WL 3882977, at *4 (holding that a reasonable reader would understand accusation that plaintiff was racist "to be an expression of opinion") (collecting cases); *Torain*, 279 F. App'x at 46 (statement that plaintiff was a "sick racist pedophile" held to be protected opinion); *Buckley v. Littell*, 539 F.2d 882, 894 (2d Cir. 1976) (holding that the terms "'fascism' and 'radical right' ... are concepts whose content is so debatable, loose and varying, that they are insusceptible to proof of truth or falsity"). Countless New York cases are in accord.[17]

---

[17] *See, e.g.*, *Russell v. Davies*, 97 A.D.3d 649, 650-51 (2d Dep't 2012) (article accusing plaintiff of being antisemitic held to be pure opinion); *Silverman v. Daily News, L.P.*, 129 A.D.3d 1054, 1055 (2d Dep't 2015) (article accusing plaintiff of

The weakness of Farrakhan's arguments is well illustrated by his reliance on *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494 (S.D.N.Y. 2012), which he misleadingly cites for the proposition that "falsely labeling a person as 'anti-Semitic,' depending on the context, can be considered a defamatory statement of fact." Appellants' Br. at 37.[18] To the contrary, the court in that case found (on facts remarkably similar to the ones here) that statements accusing the plaintiff of being an "anti-Semitic bigot," and associated with a group that is "virulently anti-Semitic" were held—as a matter of law—to be nonactionable opinion. 880 F. Supp. 2d at 500-01, 510 (granting Rule 12(b)(6) motion). In reaching its decision, the court noted that one of the defendants was "the director of an organization dedicated to fighting anti-Semitism . . . thereby signaling that he was not a disinterested observer." *Id.* at 507 (citation and internal quotation marks omitted). Another fact

---

authoring "racist writings" held to be nonactionable where "there was full disclosure of the facts supporting the opinions"); *Comic Strip Promotions, Inc. v. Envivo LLC*, 76 Misc. 3d 1229(A), at *4 (Sup. Ct. N.Y. Cnty. 2022) ("[N]umerous cases have held that interpretations of statements as racist or anti-semitic are non-actionable opinion.") (collecting cases).

[18] In fact, the court in *Egiazaryan* specifically noted that it was "*not* resolv[ing] the parties' debate over whether 'anti-Semite' is a term of sufficient specificity and provability to support a defamation claim." 880 F. Supp. 2d at 513 (emphasis added). Rather, it found that, even assuming that such accusations could be defamatory statements of fact, they were clearly statements of protected opinion "in the present context," *id.*, which is in fact remarkably similar to the context presented on this appeal.

supporting a finding of protected opinion was that the statements were made by a "self-identified major U.S. Jewish and human rights organizations who have consistently condemned [the plaintiff's political party's] message of hate," and "clearly calculated to draw th[e] situation to the attention of interested parties, who bring to the article a well-developed understanding of the issues raised." *Id.* at 512 (citations and internal quotation marks omitted). The same facts are alleged here. Just as in *Egiazaryan*, the motion to dismiss Farrakhan's defamation claims was properly granted.

Even if the law did not generally treat statements about antisemitism as protected opinion (which it does) the Challenged Statements are also nonactionable because—as the District Court properly found—each is accompanied by "a recitation of the facts on which [they are] based." SPA-21 (quoting *Elias*, 872 F.3d at 110-111). Farrakhan disputes this, arguing that the Kanye West Article (which he chose not to include among the many exhibits in his Appendix) contains "no facts" disclosing to the reader the bases for the author's opinions. Appellants' Br. at 39. In fact, the Kanye West Article includes quotes from NOI's Student National Assistant Minister Ishmael Muhammad, castigating "[t]hose who call themselves Jews but are not, but are of the Synagogue of Satan." SA-66. The Kanye West Article also quotes NOI Executive Council member Wesley Muhammad describing "the Jewish gay mafia that controls hip-hop and has used hip-hop to socially engineer Black

50

America," and "Hollywood's evil (Jewish) gay pedophile ring." *Id.*

Similarly, in the Ticketmaster Letter, Greenblatt identifies multiple bases for concluding that Farrakhan is "one of the most notorious antisemites in the country." A-306. To note just a few, the Letter quotes five statements made by Farrakhan at his annual events in honor of Saviours' Day, and provides hyperlinks to two articles on ADL's website that enumerate those and many more of Plaintiffs' inflammatory statements about Jews. A-307.[19] The law squarely protects ADL's right to present its interpretation of Farrakhan's own words, which are disclosed to the reader. *See, e.g., Valley Elecs. AG v. Polis*, No. 21-2108-cv, 2022 WL 893674, at *2 n.3 (affirming dismissal of defamation claim pursuant to Rule 12(b)(6) where "disclosure and the inclusion of hyperlinks to other sources also provide 'the basis for [the defendant's] personal opinion, leaving it to the readers to evaluate [the defendant's claims] for themselves.'") (quoting *Brian v. Richardson*, 87 N.Y.2d 46, 53-54 (1995)).

---

[19] "The hyperlink is the twenty-first century equivalent of the footnote []," and hyperlinked documents are considered to be disclosed facts that serve as a basis for finding a challenged statement to be protected opinion. *Adelson v. Harris*, 973 F. Supp. 2d 467, 484, 490 n. 19 (S.D.N.Y. 2013) *aff'd*, 876 F.3d 413 (2d Cir. 2017). *See also Mirage Ent., Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 37-38 (S.D.N.Y. 2018) (dismissing defamation claim in part because it was clear that the basis for the speaker's opinion was an article to which speaker provided a link); *Brahms v. Carver*, 33 F. Supp. 3d 192, 200 (E.D.N.Y. 2014) (dismissing defamation claim because internet posting at issue "was accompanied by the news articles on which it was so obviously based").

As to the challenged article headline ("Farrakhan Predicts Another Holocaust"), that statement is nonactionable because it is accompanied by a lengthy quote in which Farrakhan recounts speaking to a Jewish man who referred to the Holocaust by saying "never again." A-355. Farrakhan says he corrected the man, explaining that Jews would "burn" in "an oven" for their "wicked[ness]" if they don't "come with the messiah." As the District Court found, "that could be fairly interpreted as a reference to the Holocaust." SPA-21. "The full context of the communication indicates that its title is an interpretation of the facts disclosed within the article." SPA-21, 22. *See Elias*, 872 F.3d at 110 (noting that, in determining whether a challenged statement is opinion, a court must consider "the full context of the communication [and] the broader social context and surrounding circumstances") (citation omitted).

Farrakhan does not challenge the accuracy of any of the quotations attributed to him. Instead, he argues that these accurate quotations offered as support for the challenged opinions "exclude any context." Appellants' Br. at 39. Farrakhan is certainly free to claim that his boldly headlined tweet "I'm not an anti-Semite. I'm anti-Termite" was not intended to equate Jews with termites, or that he never meant to call Jews "satanic," or "predict[] another holocaust." But the ADL and Greenblatt have every right to opine that those explanations do not pass the laugh test. Since the Challenged Statements are "accompanied by a recitation of the [undisputed] facts

upon which [they are] based," *Steinhilber*, 68 N.Y.2d at 289, they are subject to absolute protection under both New York law and the First Amendment.

Farrakhan's other arguments are also unpersuasive. He contends that the Challenged Statements are not protected opinion because "ADL provides no disclaimers indicating that its words reflect its opinion or interpretation." Appellants' Br. at 39. No such "disclaimer" is required. Rather, courts look to the context in which the statement appears to determine whether the author put readers on notice that he is "not a disinterested observer," and that his statements are thus protected opinion. *Brian*, 87 N.Y.2d at 53. If anything at all is clear from the SAC, it is that ADL has successfully signaled to its readers and the general public that it is not a "disinterested observer" with respect to the hate speech propagated by Farrakhan and NOI.

Similarly, Farrakhan argues that because ADL is a recognized authority on the subject of antisemitism, its statements about this subject must be treated as statements of fact for purposes of defamation law. Appellants' Br. at 38; A-121-122 ¶¶ 538-44. But this argument fails both as a matter of common sense (subject area experts routinely offer viewpoints on their areas of specialty), and also as a matter of law. *See, e.g.*, *McClanahan v. Anti-Defamation League*, No. 23-05076-CV-SW-JAM, 2023 WL 8704258, at *5 (W.D. Mo. Dec. 15, 2023) (holding that ADL's labeling of a political candidate as "antisemitic" was nonactionable opinion);

*Egiazaryan*, 880 F. Supp. 2d at 507 (finding statement to be protected opinion where defendant's position as "the director of an organization dedicated to fighting anti-Semitism . . . thereby signal[ed] that he was not a disinterested observer") (citation and internal quotation marks omitted).

### C. Plaintiffs Cannot Plausibly Plead That The Challenged Statements Are Materially False

Even if the Challenged Statements were treated as statements of fact, they are not actionable, because they are not plausibly false.

"Antisemitism" is defined by the dictionary as "hostility toward or discrimination against Jews as a religious, ethnic, or racial group."[20] Plaintiffs cannot plausibly allege that the Challenged Statements do not express hostility towards Jews as a group. *See Atamian v. Gentile*, 337 F. App'x 182, 185 (3d Cir. 2009) ("[G]iven his history of anti-Semitic statements and actions, many of which have been recounted in pleadings filed by [the plaintiff] himself," a libel claim based on statement that plaintiff was antisemitic "lacks any and all merit"); *Liberty Lobby, Inc. v. Dow Jones & Co.*, 638 F. Supp. 1149, 1152 (D.D.C. 1986) ("To the extent that 'anti-Semitism' might be said to be an objectively verifiable fact, [] it is difficult to imagine a case in which the evidence of it would be more compelling."), *aff'd*, 838

---

[20] https://www.merriam-webster.com/dictionary/antisemitism (last visited Sept. 3, 2024).

F.2d 1287 (D.C. Cir. 1988).

And as the District Court properly found, the SAC cannot plausibly plead that it was false to report that Farrakhan has referred to Jews as "satanic" and "termites." SPA-22. The Ticketmaster Letter accurately quotes Farrakhan as referring to "'Jews who are not really Jews, but are in fact Satan. You should learn to call them by their real name: 'Satan.'" A-307. The Ticketmaster Letter also included a hyperlink to an article that accurately quoted Farrakhan as repeatedly referring to "satanic Jews," including "The Satanic Jews that control everything and mostly everybody, if they are your enemy, then you must be somebody." SA-10. And Farrakhan can hardly allege that it was false to describe him as referring to Jews as "termites" given that he quotes himself making that reference in the SAC. *See* A-131 ¶ 556, and promoted his speech on Twitter by asserting the message even more directly: "I'm not an anti-Semite. I'm anti-termite." SA-74. Farrakhan now argues that this statement made "no reference to Jews at all but to the eroding of a society." Appellants' Br. at 33. No reasonable reader or listener could possibly agree.

## D.    The SAC Fails To Plausibly Plead Actual Malice

Finally, the District Court properly found that the SAC does not plausibly plead that Greenblatt or ADL made any of the Challenged Statements with actual malice. SPA-18, 23. Farrakhan's arguments to the contrary are meritless.

Farrakhan argues that ADL has not condemned certain Jews who have made

statements that Farrakhan alleges are similar to those made by him. Appellants' Br. at 39-40; A-123-131 ¶¶ 547-51. But some alleged failure by ADL to ferret out and condemn every stray statement over many decades that Farrakhan speculates ADL might disagree with does not plausibly suggest that ADL "in fact entertained serious doubts as to the truth" of its statements *about Farrakhan*. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Moreover, the suggestion that all of the statements Plaintiffs point to are the same as Farrakhan's statements about Jews is absurd. Farrakhan points to no evidence that ADL broadly objects to all academic historians or others, of any race or creed, who write about individual Jews throughout history who have participated in bad conduct. Nor do any of the publications at issue here suggest ADL maintains that all Jews who have ever lived are saints, or that to suggest otherwise is antisemitic.

Rather, ADL takes issue with Farrakhan's use of such material to disparage Jewish people collectively ("the Jews") and accuse them of all manner of vile conduct and characteristics in both the past and the present, be it "want[ing] everyone to bow down to them," "plotting against us as we speak," or scores of similar comments. The fact that ADL has spent 40 years compiling exhaustive evidence of these statements makes it beyond implausible that ADL and Greenblatt believe that the handful of similar statements actually at issue here are false.

The same is true as to Farrakhan's far-fetched allegations that ADL and

Greenblatt "knew or should have known" that Farrakhan was not referring to Jews as "termites" or "satanic," because he claims he used those words in different contexts in public statements in 2006 and 2007.  A-133-134 ¶¶ 562-72; A-135 ¶¶ 576-78.  *See also* Appellants' Br. at 32.  Even if ADL and Greenblatt were aware of those prior statements, and even if their context was different, it would have no bearing on their subjective belief as to what Farrakhan meant when he used those words in the context of attacking Jews more than ten years later.[21]

Also without merit is Farrakhan's suggestion that ADL and Greenblatt "materially alter[ed]" his "termite" comments.  *See* Appellants' Br. at 32-33 ("Neither the ADL nor Mr. Greenblatt can prove that Minister Farrakhan said 'Jews are termites.'").  What the Ticketmaster Letter actually stated was that Farrakhan's prior statements "include Farrakhan referring to Jews as 'termites.'"  A-306.  That statement is substantially true, and Farrakhan cannot plausibly plead that ADL or Greenblatt "in fact entertained serious doubts as to [its] truth[]."  *St. Amant*, 390 U.S. at 731.

---

[21] If anything, Farrakhan's earlier statements would prove the point.  Plaintiffs argue that Farrakhan said adultery is a termite, but all adulterers are not termites.  A-133 ¶ 565.  Applying that logic here would suggest that Judaism is a termite, even if all Jews are not.

## **<u>CONCLUSION</u>**

For the reasons set forth above, Defendants-Appellees ADL and Greenblatt respectfully request that the District Court's decision be affirmed.

Dated:  New York, New York
September 3, 2024

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:_/s/ Nathan Siegel_
Nathan Siegel

Nathan Siegel
1301 K Street NW
Suite 500 East
Washington, DC 20005
Tel. 202-973-4273
nathansiegel@dwt.com

Adam I. Rich
1251 Avenue of the Americas
21st Floor
New York, New York 10020
Tel. 212-489-8230
adamrich@dwt.com

*Attorneys for Defendants Anti-Defamation League and Jonathan Greenblatt*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify pursuant to Fed. R. App. P. 32(a) and Local Rule 32(a)(4)(A) that the foregoing brief for Defendants-Appellees ADL and Greenblatt is proportionately spaced, has a typeface of 14 points or more, and contains 13,871 words.

Dated: September 3, 2024

*/s/ Nathan Siegel*
Nathan Siegel
