# 24-1237-cv

## United States Court of Appeals
### *for the*
## Second Circuit

MINISTER LOUIS FARRAKHAN, NATION OF ISLAM,

*Plaintiffs-Appellants,*

– v. –

ANTI-DEFAMATION LEAGUE, JOHNATHAN GREENBLATT, individually, in his official capacity as CEO and national director of the Anti-Defamation League, RABBI ABRAHAM COOPER, individually and in his official capacity as Director of Social Global Action Agenda for Simon Wiesenthal Center, SIMON WIESENTHAL CENTER,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF FOR DEFENDANTS-APPELLEES SIMON WIESENTHAL CENTER AND RABBI ABRAHAM COOPER**

PATRICIA L. GLASER
JULIE R.F. GERCHIK
ERIC Y. SU
GLASER WEIL FINK HOWARD JORDAN
& SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
(310) 553-3000

*Attorneys for Defendants-Appellees Simon Wiesenthal Center and Rabbi Abraham Cooper*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

Introduction ................................................................. 7

CounterStatement Of Issues Presented For Review ................................. 8

CounterStatement of the Case ........................................... 9

    I.    Appellants' Complaints ........................................... 9

    II.    The District Court Dismissed The SAC With Prejudice .... 10

Summary of Counterarguments ................................................ 12

Standard of Review ......................................................... 13

Counterarguments ........................................................... 14

    I.    Legal Standard For Defamation Claims ............................ 14

    II.    Section 7.E - SWC Appellees' Synagogue of Satan
           Statement Is A Non-Defamatory Opinion ......................... 16

           1.    The Statement Is A Pure Non-Actionable Opinion .. 16

           2.    Appellants Failed To Plead Actual Malice .............. 20

    III.    Section 7.F – SWC Appellees' Use Of "Anti-Semitic
           Incitement" Is A Non-Defamatory Opinion ...................... 23

           1.    The Phrase "Anti-Semitic Incitement" Lacks A
                Precise Definition ..................................... 24

           2.    An Accusation Of "Anti-Semitic Incitement" Cannot
                Be Proven Objectively True Or False ...................... 27

           3.    The Context Of SWC Appellees' Article Does Not
                Imply Farrakhan Committed A Crime ...................... 28

4.   Appellants' Conclusory Statements Again Fail to
     Plead Actual Malice ................................................ 30

IV.   Issue 10 – The term "Anti-Semite" Should Not Be
      Defamatory *Per Se* ............................................. 32

Conclusion ............................................................. 35

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Admiral Insurance Company v. Niagara Transformer Corporation*,
  57 F.4th 85 (2d Cir. 2023)..................................................................33

*Afro-Am. Pub. Co. v. Jaffe*,
  366 F.2d 649 (D.C. Cir. 1966) ........................................................35

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................. 13, 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ..........................................................................14

*Bernstein v. O'Reilly*,
  No. 17 CIV. 9483 (DAB), 2019 WL 10995110 (S.D.N.Y. Sept. 26, 2019) ..26

*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015) .................................. 20, 21, 22, 30

*Brimelow v. New York Times Co.*,
  No. 21-66-CV, 2021 WL 4901969 (2d Cir. Oct. 21, 2021).................... 22, 23

*Carto v. Buckley*,
  649 F. Supp. 502 (S.D.N.Y. 1986)..................................... 17, 25, 34

*Celle v. Filipino Rep. Enters. Inc.*,
  209 F.3d 163 (2d Cir. 2000)............................................... 11, 15

*Chau v. Lewis*,
  771 F.3d 118 (2d Cir. 2014) ............................................... 14, 15

*Citizens United v. Schneiderman*,
  882 F.3d 374 (2d Cir. 2018)..............................................................33

*Cooper v. Franklin Templeton Invs.*,
  No. 22-2763-CV, 2023 WL 3882977 (2d Cir. June 8, 2023)............ 14, 15, 18

*Cooper v. Templeton*,
  629 F. Supp. 3d 223 (S.D.N.Y. 2022)................................ 18, 19

*Egiazaryan*,
  880 F. Supp. 2d 494 (S.D.N.Y. 2012).........................................29

*Elias v. Rolling Stone LLC*,
  872 F.3d 97 (2d Cir. 2017)................................................................15

*Galland v. Johnston,*
    2015 WL 1290775 (S.D.N.Y. 2015) ................................................26

*Harte-Hanks Communications, Inc. v. Connaughton,*
    491 U.S. 657 (1989) .....................................................................21

*Kerik v. Tacopina,*
    64 F. Supp. 3d 542 (S.D.N.Y. 2014) ...................................... 21, 22

*Lansing v. Carroll,*
    No. 11 CV 4153, 2015 WL 3962345 (N.D. Ill. June 29, 2015) ...................26

*Liberman v. Gelstein,*
    80 N.Y.2d 429 (1992) ...................................................................33

*McCafferty v. Newsweek Media Grp., Ltd.,*
    955 F.3d 352 (3d Cir. 2020) ........................................................15

*McMillian v. MTA Metro-N. R.R.,*
    2021 WL 4311318 (S.D.N.Y. Sept. 20, 2021) ................................23

Mullemeister v. Snap-On Tools Corp.,
    587 F. Supp. 868 (SDNY 1984) ............................................ 34, 35

*Nunes v. Lizza,*
    476 F. Supp. 3d 824 (N.D. Iowa 2020) .........................................25

*Palin v. N.Y. Times Co.,*
    940 F.3d 804 (2d Cir. 2019) .................................................. 14, 33

*Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.,*
    178 F. Supp. 3d 118 (S.D.N.Y. 2016) ...........................................16

*Segarra v. Fed. Rsrv. Bank of New York,*
    802 F.3d 409 (2d Cir. 2015) ........................................................13

*Sweeney v. Schenectady Union Publishing Co.,*
    122 F.2d 288 (2d Cir.1941) .........................................................35

*United States v. Farooq,*
    58 F.4th 687 (2d Cir. 2023) .........................................................33

*Walker v. Beaumont Indep. Sch. Dist.,*
    938 F.3d 724 (5th Cir. 2019) ................................................. 21, 22

*Westmoreland v. CBS Inc.,*
    601 F. Supp. 66 (S.D.N.Y. 1984) .................................................22

*Zherka v. Amicone,*
    634 F.3d 642 (2d Cir. 2011) .................................................. 33, 34

## STATE CASES

*Comic Strip Promotions, Inc. v. Envivo LLC*,
  76 Misc. 3d 1229(A), 176 N.Y.S.3d 764 (N.Y. Sup. Ct. 2022) ........ 17, 25, 34

*Gisel v. Clear Channel Commc'ns, Inc.*,
  94 A.D.3d 1525 (N.Y. App. Div. 2012) ........................................18

*Holy Spirit Ass'n for the Unification of World Christianity v. Sequoia Elsevier Publg Co.*,
  75 A.D.2d 523 (1st Dep't 1980) ............................................. 27, 34

*Immuno AG. v. Moor-Jankowski*,
  77 N.Y.2d 235
  567 N.E.2d 1270 (1991)....................................................29

*Kindred v. Colby*,
  54 Misc. 3d 1205(A), 50 N.Y.S.3d 26 (N.Y. Sup. Ct. 2015),
  *aff'd*, 145 A.D.3d 1586, 42 N.Y.S.3d 906 (2016)............................27

*Morgan v. NYP Holdings, Inc.*,
  93 N.Y.S.3d 627 (N.Y. Sup. Ct. 2017) ........................... 17, 25, 34

*Russell v. Davies*,
  97 A.D.3d 649 (2012) .................................................. 17, 18, 25, 34

*Schermerhorn v. Rosenberg*,
  73 A.D.2d 276, 426 N.Y.S.2d 274 (1980) ....................................35

*Silverman v. Daily News, L.P.*,
  11 N.Y.S.3d 674 (N.Y. App. Div. 2015) ......................................29

*Stega v. New York Downtown Hospital*,
  31 N.Y.3d 661 (2018) ......................................................18

## FEDERAL STATUTES

28 U.S.C. § 220l(a) ...............................................................33

## FEDERAL RULES

Fed. R. Civ. Proc., Rule 12(b)(6)................................................ 7, 8, 13

vi

## <u>INTRODUCTION</u>

This appeal brought by Plaintiffs-Appellants Nation of Islam ("NOI") and Minister Farrakhan ("Farrakhan," and together, "Appellants") has no merit and should be dismissed. Consistent with decades of binding precedent, the district court granted Defendants-Appellees Simon Wiesenthal Center ("SWC") and SWC's Social Action Director, Rabbi Cooper's ("Rabbi Cooper," and together, "SWC Appellees") Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) because Appellants failed to state any claims for defamation. Appellants' attempt to weaponize the legal system to silence Appellees so that they fear calling out anti-Semitism wherever it rears its ugly head has no basis in the law and therefore failed—as this appeal should too.

For decades, Farrakhan has freely spoken his mind about the Jews and Judaism. *See e.g.*, A-34 at ¶81 (referring to Judaism as a "dirty religion"), A-36 at ¶88 ("The Jews in that day wanted no truth to be told if it conflicted with their selfish desires"), A-56 at ¶191.c ("Hitler was great, but he wasn't good."), A-131 at ¶556 ("Call me an 'anti-Semite.' Stop it. I'm anti-termite."). But when SWC Appellees exercised their same First Amendment rights to express their opinion about Farrakhan's statements, Appellants filed this legally baseless case seeking *$4.8 billion*. The District Court decisively dismissed all of Appellants' claims with prejudice, following the scores of cases that confirm that the designation of a

7

person or statement as "anti-Semitic" is an unmistakable and protected statement of opinion and ***not*** an assertion of fact, which is the *sine qua non* of a defamation claim. Appellants nonetheless continue to ignore decades of legal precedent directly contradicting their claims, and filed this baseless appeal to weaponize the legal process to continue to harass SWC Appellees.

Because Appellants failed to state any valid claims against SWC Defendants, the District Court was correct to dismiss Appellants' claims with prejudice. Now this Court too should dismiss Appellants' appeal, and affirm the District Court's decision to dismiss all claims with prejudice.

## COUNTERSTATEMENT OF ISSUES PRESENTED FOR REVIEW

While Appellants list ten different issues, only two issues relate to SWC Appellees:

1. Whether the District Court correctly ruled pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules" or "FRCP") that Appellants failed to state claims for defamation. *See* Sections 7.E and 7.F of Appellants' Opening Brief.

2. Whether the phrase "anti-Semite" and its derivatives should be declared the "fifth category" of defamation *per se*. *See* Issue 10 of Appellants' Opening Brief.

## COUNTERSTATEMENT OF THE CASE

### I.    Appellants' Complaints

On October 16, 2023, Appellants commenced litigation against the SWC Appellees, the Anti-Defamation League ("ADL"), and ADL CEO and National Director Jonathan Greenblatt ("Greenblatt," and collectively with SWC Appellees, "Appellees").  After two attempts to plead any viable claims, on January 5, 2024, Appellants filed their Second Amended Complaint ("SAC").  *See* A-18.  As it relates to the SWC Appellees, Appellants alleged two claims of defamation *per se* against SWC and Rabbi Cooper for various printed statements about Farrakhan, as well as a claim for defamation *per se* against all Defendants for their use of the word "anti-Semite."  *See generally* A-122-155.

As was the case in the prior versions, the defamation claims against the SWC Appellees in Counts 8 and 9 are based on the following statements from a March 1, 2023 article on SWC's website:

(1)    "condemning Louis Farrakhan's latest Savior's Day anti-Semitic and anti-Judaic diatribes during the Nation of Islam's annual conference in Chicago."  Statements 8 and 10, A-142 at ¶622, A-147 at ¶650.

(2)    "Farrakhan invoked the New Testament's 'Synagogue of Satan,' to demonize Judaism and those who revere the Torah."  Statements 9 and 11, A-144 at ¶ 631, A-148 at 651 (the "Synagogue of Satan

Statement").

(3)     "[w]e have tracked and denounced Farrakhan and his trail of Jew

hatred and anti-Semitic incitement for four decades."  Statement 12,

A-150 at ¶ 669 (the "Anti-Semitic Incitement Statement").

Lastly, Count 10 against all Defendants-Appellees asks the Court to declare the

term "anti-Semite" to be a new category of defamation *per se*.  A-153.

## II.     The District Court Dismissed The SAC With Prejudice

On April 5, 2024, the District Court dismissed the SAC in its entirety, with

prejudice.  *See* Dkt. 40.1, Appellants' Special Appendix ("SPA"), at SPA-29.  As it

relates to SWC Appellees, the District Court (1) dismissed with prejudice

Appellants' defamation claims concerning three statements by SWC Appellees,

finding that the statements were protected as pure opinion statements that were

made without actual malice, and (2) dismissed Count 10, declining to restrict the

First Amendment and also holding that Appellants lacked standing.  SPA-21-25.

With regards to the defamation claims, the District Court held that "[t]he

challenged statements referring to Farrakhan as anti-Semitic are non-actionable

statements of opinion."  SPA-21.  The Court also noted that the statements were

pure opinions because , "[t]he full context of the communication indicates that its

title[1] is an interpretation of the facts disclosed within the article." *Id.* And because the context indicates the article is solely based on public facts, the statements calling Farrakhan anti-Semitic cannot be "reasonably understood as implying the assertion of undisclosed facts justifying the opinion." SPA-21 (citing *Celle*, 209 F.3d at 178).

The District Court further held that Appellants had "not alleged facts allowing a reasonable inference of either falsity or actual malice." SPA-22. In fact, not only had Appellants not sufficiently pled that SWC Appellees knew their statements to be false, "[t]o the contrary, the SAC itself alleges facts that would dispel any such expectation." SPA-23; *see e.g.*, A-34 at ¶81 (referring to Judaism as a "dirty religion"), A-36 at ¶88 ("The Jews in that day wanted no truth to be told if it conflicted with their selfish desires"), A-56 at ¶191.c ("Hitler was great, but he wasn't good."), A-131 at ¶556 ("Call me an 'anti-Semite.' Stop it. I'm anti-termite.").

Lastly, the District Court dismissed Count 10 of the SAC, declining to exercise jurisdiction because "the requested declaratory judgments would not serve a useful purpose." SPA-24. The District Court further noted that Appellants have

---

[1] SWC Appellees' article was titled, "SWC: Farrakhan's Annual Savior's Day Anti-Jewish Tirades Continue As Does Silence of Political and Faith Leaders."

not met the heavy burden required to restrict the constitutional right to free speech. SPA-24-25.

## SUMMARY OF COUNTERARGUMENTS

Appellants contend that the statement identified in Section 7.E, accusing Farrakhan of using the phrase "Synagogue of Satan" to "Demonize Judaism," is a statement of fact or mixed opinion, and that Appellants sufficiently alleged actual malice in the SAC. However, this statement is pure opinion, responding to Farrakhan's public speech. Further, Appellants' SAC failed to allege actual malice because it did not allege any facts, as they must, to plausibly show that SWC Appellees knew this statement to be false.

Appellants also argue that the statement of Section 7.F, accusing Farrakhan of "anti-Semitic incitement," is a statement of fact made with actual malice. Again, the phrase "anti-Semitic incitement" is another classic protected opinion because it is political rhetoric without a clear meaning that can be proven true or false. Moreover, Appellants not only failed to allege a plausible claim for actual malice—i.e., that SWC Appellees knew that their statements were false—but Appellants' own statements concerning Judaism and the Jewish community, which were pled in the SAC, actually show the opposite. *See e.g.*, A-34 at ¶81, A-36 at ¶88, A-56 at ¶191.c, A-131 at ¶556.

Appellants appear to argue that the District Court did not address Issue 10,

and that this Court should overwrite decades of legal precedent to declare the term "anti-Semite" defamatory *per se*. This nonsensical claim seeks to suppress free speech and insulate Appellants from constitutionally protected political comment or critique, which the District Court correctly addressed and dismissed for lack of standing.

## STANDARD OF REVIEW

Appellate Courts review an appeal from a dismissal in the district court *de novo*. *Segarra v. Fed. Rsrv. Bank of New York*, 802 F.3d 409, 411 (2d Cir. 2015) ("We review *de novo* the district court's decision to dismiss under Federal Rule of Civil Procedure 12(b)(6).").

In order to survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (citations omitted).

13

It is black letter law that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, *supra*, 556 U.S. at 679.

## COUNTERARGUMENTS

### I.     Legal Standard For Defamation Claims

Under New York law, a claim for defamation requires five elements: (1) a written defamatory **statement of fact** concerning the plaintiff, (2) publication to a third party, (3) fault, (4) **falsity** of the defamatory statement, and (5) special damages or *per se* actionability.  *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).  Critical to both the first and fourth elements are the requirement that a statement be susceptible to proof as either true or false; if a statement cannot be affirmatively disproven, no defamation claim can proceed.  *See, e.g.*, *Cooper v. Franklin Templeton Invs.*, No. 22-2763-CV, 2023 WL 3882977, at *4 (2d Cir. June 8, 2023) ("*Cooper II*"); *Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014) ("[O]nly factual statements are actionable as defamation or libel."). Whether an allegedly defamatory statement is an expression of opinion or statement of fact is a question of law, and both federal and New York law provide absolute immunity for

14

statements of opinion. *See Cooper II*, 2023 WL 3882977, at *4 ("the New York Constitution provides for absolute protection of opinions") (citing *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 178 (2d Cir. 2000)); *Chau*, 771 F.3d at 128 ("New York law protects derogatory statements which may be categorized as 'opinion' as opposed to 'fact.'"); *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020) ("Under the First Amendment, opinions based on disclosed facts are absolutely privileged […] even when an opinion is extremely derogatory, ***like calling another person's statements anti-Semitic***.") (internal quotations and citations omitted) (emphasis added).

In determining whether a statement is opinion or fact, courts look at the content of the communication as a whole and consider three factors: (1) whether the specific language at issue has a precise meaning that is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears, or the broader social context and surrounding circumstances, are such as to signal to readers or listeners that what is being read or heard is likely to be opinion and not fact. *See Cooper II*, 2023 WL 3882977, at *4 (citing *Elias v. Rolling Stone LLC*, 872 F.3d 97, 110 (2d Cir. 2017)). "The dispositive inquiry is whether a reasonable reader could have concluded that the statements were conveying facts about the plaintiff." *Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire*

15

*Dist.*, 178 F. Supp. 3d 118, 159 (S.D.N.Y. 2016).

## II.    Section 7.E - SWC Appellees' Synagogue of Satan Statement Is A Non-Defamatory Opinion

Appellants allege that the SWC Appellees defamed Minister Farrakhan and the Nation of Islam by publishing the March 1, 2023 statement that "Farrakhan invoked the New Testament's 'Synagogue of Satan,' to demonize Judaism and those who revere the Torah."  A-144, ¶631.  Without citing ***any*** legal precedent, Appellants appear to argue that this was a defamatory statement of fact, simply stating in a conclusory fashion that the above statement "is not a statement of opinion, it is a statement of fact; he either engaged in that specific act or he did not, and he did not."  A-144, ¶633.

Consistent with decades of precedent, SWC Appellees' Synagogue of Satan Statement is a protected opinion; SWC Appellees are merely stating their opinion about Farrakhan's public speech, using subjectively defined phrases and political rhetoric to evaluate and critique the impact of Farrakhan's undisputedly uttered rhetoric.  Appellants' conclusory arguments are not supported by any legal precedent whatsoever.  The Court should affirm the District Court's decision.

### 1.    <u>The Statement Is A Pure Non-Actionable Opinion</u>

As an initial matter, Appellants do not provide any arguments against the District Court's ruling that the Synagogue of Satan Statement is "likely to be an

16

opinion, not fact." *See* SPA-21. There is no question that the SWC Appellees'
Synagogue of Satan Statement meets the test: it is (1) unclear in meaning, (2) not
verifiable, and (3) used in a what the case law would describe as a "partisan"[2]
article on a Jewish rights organization's political advocacy website. Indeed, both
federal and state courts consistently hold that similar accusations of anti-Semitism
or bigotry are protected opinions because they do not have clear or precise
definitions that would allow this Court to determine whether the challenged
statements are objectively true or false.[3]

Appellants instead argue—again, without citing *any* legal precedent—that
the Synagogue of Satan Statement was a "mixed opinion" because the "article did
not disclose any facts to the reader that could be relied upon as the basis for the

---

[2] For clarity, SWC Appellees' article was not politically partisan.

[3] *See, e.g.*, *Carto v. Buckley*, 649 F. Supp. 502, 504 (S.D.N.Y. 1986) ("There is no
one opinion of what constitutes 'racial and religious bigotry,' or for that matter
what constitutes 'bigotry' generally"); *Russell v. Davies*, 97 A.D.3d 649, 651
(2012) (holding that news stories that labeled an essay written by plaintiff as
"racist" and "anti-Semitic" were nonactionable opinions); *Comic Strip Promotions,
Inc. v. Envivo LLC*, 76 Misc. 3d 1229(A), 176 N.Y.S.3d 764 (N.Y. Sup. Ct. 2022)
(holding accusations of anti-Semitism are opinions, and listing cases finding the
same); *Morgan v. NYP Holdings, Inc.*, 93 N.Y.S.3d 627 at *7 (N.Y. Sup. Ct. 2017)
("any implication that plaintiff is anti-semitic constitutes a non-actionable opinion
which is based on disclosed facts").

faulty opinion," including "no accurate account of Minister Farrakhan's words from his Saviours' Day speech" and "no quotes."  This is incorrect.

When courts look at the full context of the communication in which the statement appears, courts will consider a statement as pure opinion if the statement is ***based on public facts and does not imply knowledge of undisclosed facts***.  *See Cooper v. Templeton,* 629 F. Supp. 3d 223, 235 (S.D.N.Y. 2022)*, aff'd sub nom. Cooper II*, 2023 WL 3882977; *Russell*, 97 A.D.3d at 651 (finding context indicated to the reasonable reader that statements were opinions because "the defendants made the statements with express reference to the essay written by the plaintiff"); *Gisel v. Clear Channel Commc'ns, Inc.*, 94 A.D.3d 1525, 1526 (N.Y. App. Div. 2012) ("Because Lonsberry's statements were based on facts that were widely reported by Western New York media outlets and were known to his listeners, it cannot be said that his statements were based on undisclosed facts.").  On the other hand, "a statement of opinion that implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, is a 'mixed opinion' and is actionable."  *Stega v. New York Downtown Hospital*, 31 N.Y.3d 661, 674 (2018).

In a case involving less publicity, the Southern District of New York held that accusations of racism against a former employee were pure opinions, because the statements were based on said former employee's words and actions in a viral

video.  *Cooper*, 629 F. Supp. 3d at 236.  The court held that a "reasonable reader" would have understood that the racism accusations were based only on the public video, even though the statement indicated that the employer decided to terminate the employee after an "internal review."  *Id.* As such, the statements were pure opinions.  *Id.*  The District Court reached the same conclusion here, holding that "the full context of the communication indicates that its title is an interpretation of the facts disclosed within the article."  SPA-21-22.

Here, the article clearly *does* reference Farrakhan's nationally televised Saviour's Day Speech, and condemns his use of the phrase "Synagogue of Satan"—a phrase that Farrakhan undisputedly used in his speech.  The article's title and contents directly refer to Farrakhan's Saviour's Day speech, wherein he used the phrase "Synagogue of Satan," and the context of the article is plainly a direct reaction to the very public speech.  As was the case in *Cooper*, where the defendant expressed a protected opinion that its ex-employee was racist based on the words and actions in a viral video, here the SWC Appellees expressed their opinion about clearly disclosed facts in *arguing* that Farrakhan demonized Judaism with his public use of the phrase "Synagogue of Satan."  Unlike the defendant in *Cooper*, however, SWC Appellees never mentioned an "internal review," or any other potential source of undisclosed information.

Appellants may disagree with SWC Appellees' opinion of the highly

publicized speech, and specifically whether the phrase was used to "demonize Judaism," but there is nothing in the article that even hints at knowledge of **undisclosed facts**. Therefore, the allegation that Farrakhan used the phrase "Synagogue of Satan" to "demonize Judaism" is a pure opinion, and the Court should affirm the District Court's dismissal.

### 2. Appellants Failed To Plead Actual Malice

Appellants do not dispute that Farrakhan is a public figure, or that the actual malice standard applies. Without making any *legal* arguments yet again, Appellants instead make a circular argument that the statement "adequately alleged actual malice" because the SWC Appellees "made such statement with known falsity" as (according to Appellants) the Synagogue of Satan Statement was false and "altered" (by which Appellants apparently mean misconstrued, even though Appellants do not identify any particular statement that was not actually uttered by Farrakhan, *see* A-145, ¶¶ 635-40). Unsurprisingly, Appellants' circular reasoning failed and the District Court held that "Farrakhan has not alleged facts allowing a reasonable inference of either falsity or actual malice." SPA-22.

Actual malice requires "knowledge that the statements were false or with reckless disregard as to their falsity." *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). At the motion to dismiss stage, a plaintiff must "plead plausible grounds to infer actual malice by alleging enough facts to raise a reasonable

expectation that discovery will reveal evidence of actual malice." *Id.* at 546 (internal quotations omitted). Moreover, "the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667-68 (1989). Appellants fall woefully short of this standard—factually and legally.

First, by Appellants own admission, SWC Appellees did not ***alter*** Farrakhan's words. Appellants do not dispute that Farrakhan used the phrase "Synagogue of Satan." Nor do Appellants dispute that Farrakhan made many references to the "Jewish community," "Jews," and "Jewish people." Even the term "Synagogue" itself undisputedly relates to Judaism. The SWC Appellees, therefore, cannot be said to have acted with actual malice simply by interpreting Farrakhan's criticisms of the "Jewish community," "Jews," and the "Jewish people" as criticism of Judaism, as that analysis is another statement of opinion not subject to falsifiability. *See Kerik v. Tacopina*, 64 F. Supp. 3d 542, 573 (S.D.N.Y. 2014) (holding that even a "careless and perhaps irresponsible" misinterpretation of fact does not show defendants "entertained serious subjective doubts about the truth of the accusation."); *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 744 (5th Cir. 2019) ("Neither a failure to investigate fully nor an understandable misinterpretation of ambiguous facts constitutes actual malice."). Nonetheless, in

contrast to *Kerik* and *Walker*, this case involves a very reasonable interpretation of Farrakhan's words, regardless of Appellants' unique and self-serving understanding of the phrase "Synagogue of Satan."

Second, Appellants' claim that SWC Appellees have historically altered Farrakhan's words—specifically that SWC Appellees have stated that Farrakhan referred to Judaism as a "gutter religion" rather than a "dirty religion"—is irrelevant. This conclusory allegation that SWC Appellees are biased against Appellant does not demonstrate that the SWC Appellees knew ***this*** statement to be false, and does not and cannot constitute evidence of actual malice. *See Westmoreland v. CBS Inc.*, 601 F. Supp. 66, 68 (S.D.N.Y. 1984) ("The fact that a commentary is one sided and sets forth categorical accusations has no tendency to prove that the publisher believed it to be false."); *see also Biro*, 963 F. Supp. 2d at 285 ("the fact that an article is one sided or fails to include as many positive features about the subject as negative ones has no tendency to prove that the publisher believed it to be false."). Indeed, even "ill will" or past animosity toward a plaintiff "provides no basis for plausibly inferring that the [defendant] had any doubts about the truth of its statements." *Brimelow v. New York Times Co.*, No. 21-66-CV, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021).

Third, the argument that "the statement was made with known falsity" is both conclusory and implausible. Appellants allege that Minister Farrakhan has

denied being an anti-Semite and that he had made some purportedly positive statements about Judaism and Jews, which Appellants contend SWC Appellees "knew, or should have known" about since they have allegedly tracked Minister Farrakhan's speeches and lectures throughout his career. A-146, ¶643. The District Court rejected this argument too because SWC Appellee's statement is an opinion that cannot be objectively false. SPA-22. Indeed, in *Brimelow*, an analogous case where a plaintiff accused of being a white nationalist alleged "repeated and persistent denials" as to the truth of the statements at issue, this Circuit has held that "denials without more do not support a plausible claim of actual malice." 2021 WL 4901969, at *3. Moreover, such conclusory statements need not be given any weight, particularly in light of Farrakhan's self-pled statements criticizing Jewish people and Judaism. *See McMillian v. MTA Metro-N. R.R.*, 2021 WL 4311318, at *4 (S.D.N.Y. Sept. 20, 2021); A-34-36, at ¶¶ 81, 88.

In short, Appellants failed to demonstrate that SWC's statement that Farrakhan used the phrase "Synagogue of Satan" to "demonize Judaism" was either a mixed opinion or made with actual malice; therefore, the Court should affirm the District Court's decision dismissing this claim.

## III. Section 7.F – SWC Appellees' Use Of "Anti-Semitic Incitement" Is A Non-Defamatory Opinion

Appellants also base their defamation claims on SWC Appellees' March 1,

2023 statement concerning Farrakhan's "anti-Semitic incitement for four decades." A-144, ¶669; A-212. Appellants again do not cite a single case in support of their position, but merely argue that the phrase "anti-Semitic incitement" is a statement of fact because "Black's Law Dictionary defines 'incitement' as, 'the act of persuading another person to commit a crime.'" A-151, ¶673. Appellants further argue that the context of the article indicates the Anti-Semitic Incitement Statement is a statement of fact because the SWC Appellees' article also notes: (1) "words lead to action and his toxic hatred has been absorbed," and (2) "American Jewry is reeling from violent anti-Semitic hate crimes." *See* A-212.

Appellants have cherry-picked a particular (and technical) definition of the term "incitement," ignoring both the popular use of the term and also the actual facts that demonstrate that no part of this statement implies that Farrakhan committed a crime or even specifically encouraged others to do the same. As such, the District Court also dismissed this claim with prejudice because the statement was clearly an opinion statement made without actual malice.

### 1. <u>The Phrase "Anti-Semitic Incitement" Lacks A Precise Definition</u>

First, the allegation that Rabbi Cooper accused Farrakhan of inciting violence against Jews or inciting a riot (A-151-152, at ¶¶ 673-675, 683) is a blatant misrepresentation of the facts. Rabbi Cooper did not accuse Farrakhan of ***inciting violence or riots***, which Plaintiffs argue is a misdemeanor; the actual phrase Rabbi

Cooper used according to Appellants' own allegations was "anti-Semitic incitement." A-212. Unlike Appellants' citation to the New York Penal Code in the SAC, inciting anti-Semitism—as opposed to *inciting violence or riots*—is neither a crime, nor a phrase with a precise definition. Moreover, as previously discussed, "anti-Semitic" in and of itself does not have a verifiable meaning. *See e.g.*, *Carto*, 649 F. Supp. at 504; *Russell*, 97 A.D.3d at 651; *Comic Strip Promotions*, 76 Misc. 3d 1229(A); *Morgan*, 93 N.Y.S.3d 627 at *7.

Second, the common dictionary meaning of "incite" is "to move to action," "stir up," "spur on," or "urge on."[4] *See, e.g.*, *Nunes v. Lizza*, 476 F. Supp. 3d 824, 848 (N.D. Iowa 2020) (citing Merriam Webster's "broader definition meaning" of "conspire"). Although a term may have a legal definition in one context, the term does not necessarily have a singular objective meaning in all contexts, especially given the context of the statement, which was communicated to lay readers and not a legal audience. Here, while inciting *violence or riots* may be considered "an act of persuading another person to commit a crime" (A-151 at ¶ 673), inciting *anti-Semitism*—a term that has no objective meaning—cannot be reasonably read as a statement about convincing others to commit crimes, especially given the complete

---

[4] *Incite*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/incite.

25

absence of any other discussion about such criminal acts in the remainder of the article.

Third, under New York law, using colloquial phrases that may hint at criminal behavior "does not constitute defamation *per se* because these phrases do not convey with reasonable specificity that the party committed a crime." *Bernstein v. O'Reilly*, No. 17 CIV. 9483 (DAB), 2019 WL 10995110, at *5 (S.D.N.Y. Sept. 26, 2019) (holding "loose and hyperbolic" phrases such as "shakedown," "fraudulent," "extortionate," or "hit job" are not defamatory); *see also Lansing v. Carroll*, No. 11 CV 4153, 2015 WL 3962345, at *8 (N.D. Ill. June 29, 2015) (holding that accusations of hiding assets abroad are not defamatory "because its meaning is too imprecise"); *Galland v. Johnston*, 2015 WL 1290775, *5-6 (S.D.N.Y. 2015) (holding statements that plaintiff's emails were "threatening" and that plaintiff "chooses to run his business in a threatening manner" were "not readily understood as having a precise meaning, nor are they susceptible of being proven false"). Here, the phrase "anti-Semitic incitement," given the context, is similarly colloquial and has no precise meaning to any audience, and therefore this factor also strongly favors a finding that the Anti-Semitic Incitement Statement is a protected opinion.

**2.** **An Accusation Of "Anti-Semitic Incitement" Cannot Be Proven Objectively True Or False**

Because "Anti-Semitic Incitement" does not have a clear meaning, it also cannot be proven objectively true or false. In New York, "[t]o constitute defamation *per se* premised on a statement charging Plaintiff with a crime, ***the statement must impute the commission of a specific indictable offense*** for which punishment may be inflicted upon conviction." *Kindred v. Colby*, 54 Misc. 3d 1205(A), 50 N.Y.S.3d 26 (N.Y. Sup. Ct. 2015), *aff'd*, 145 A.D.3d 1586, 42 N.Y.S.3d 906 (2016). (emphasis added).

Here, this statement is not and cannot be "defamatory *per se*," because the term "Anti-Semitic Incitement" as used by SWC Appellees here contains no specific allegations that Appellants committed or are committing a crime. Moreover, Appellants have not alleged that Rabbi Cooper ever accused Farrakhan of inciting violence or criminal behavior, the context of the statement at issue contains no discussion of other crimes being committed, and therefore no criminal incitement is referenced here. Instead, Rabbi Cooper stated that Farrakhan incited ***anti-Semitism***, which is a statement that cannot be proven true or false because the term "anti-Semitism" has no objective meaning, as discussed above. *See Holy Spirit Ass'n for the Unification of World Christianity v. Sequoia Elsevier Publg Co.*, 75 A.D.2d 523, 24 (1st Dep't 1980) ("In the realm of religious faith, and in

that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his neighbor."). Therefore, Appellants' claims fail because they cannot objectively prove or disprove whether Farrakhan incited anti-Semitism, an imprecise concept in and of itself. As such, this factor also strongly supports a finding that the Anti-Semitic Incitement Statement is a protected opinion.

### 3. The Context Of SWC Appellees' Article Does Not Imply Farrakhan Committed A Crime

Appellants argue that the context of the article indicates "anti-Semitic incitement" is an accusation of a crime because the same article also states: (1) "words lead to action and his toxic hatred has been absorbed," and (2) "American Jewry is reeling from violent anti-Semitic hate crimes." A-212. But a reasonable reader would understand that Rabbi Cooper voiced his *opinion* that Farrakhan's words incite anti-Semitism (which is not a crime), and that these sentiments could eventually lead to action. Rabbi Cooper further stated that Jewish Americans were victims of hate crimes and anti-Semitism, but the hate crimes and anti-Semitism cited were referenced only in the most general context and not attributed to Appellants in particular, or even specifically resulting from Appellants' statements. *See* A-212. Put simply, read in context, article clearly does not imply that Farrakhan incited violence or riots. *See id.*

28

Further, the overall context of the article clearly indicates the statements are opinions in a partisan (i.e., pro-Jewish rights) article. As a matter of New York law, partisanship is an indication of an opinion, and the Court will use a "reasonable reader" standard to determine whether statements are partisan opinions. *See Egiazaryan*, 880 F. Supp. 2d 494, 507-509 (S.D.N.Y. 2012) (finding a reasonable reader would have understood that news articles accusing plaintiff of anti-Semitism were "voicing no more than a highly partisan point of view."); *see also Silverman v. Daily News, L.P.*, 11 N.Y.S.3d 674 (N.Y. App. Div. 2015) (finding that news article describing plaintiff's publications as racist were not actionable because "a reasonable reader would have concluded that he or she was reading opinions, and not facts, about the plaintiff.").

SWC is, according to Appellants, "a global Jewish human rights activist organization" that "confronts antisemitism, hate, stands with Israel, defends the safety of Jews worldwide, and teaches the lessons of the Holocaust for future generations." A-52 at ¶¶ 166, 167. Rabbi Cooper is the Director of Global Social Action for SWC. A-24 at ¶ 19. Any reasonable reader would understand that the SWC Appellees are advocates for Jewish rights, and are likely to provide partisan opinions decrying anti-Semitism and combatting statements that would promote or otherwise further anti-Semitism and anti-Semitic causes. *See Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 254, 567 N.E.2d 1270, 1280 (1991) (finding that

animal activist drawing attention to conservationist concerns were "highly partisan" opinions).

All three factors heavily favor a finding that Rabbi Cooper's statement accusing Farrakhan of "anti-Semitic incitement" is a protected opinion; accordingly, the District Court's dismissal of this claim with prejudice should be affirmed.

### 4. **Appellants' Conclusory Statements Again Fail to Plead Actual Malice**

As discussed earlier, actual malice requires "knowledge that the statements were false or with reckless disregard as to their falsity." *Biro*, 807 F.3d at 544. To survive a motion to dismiss, a plaintiff must "plead plausible grounds to infer actual malice by alleging enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice." *Id.* at 546 (internal quotations omitted).

Appellants here claim the SAC sufficiently alleged actual malice because Rabbi Cooper "either monitors, or receives reports on, practically every word Minister Farrakhan speaks," and "therefore, he knew, or should have known, that Minister Farrakhan has never advocated for violence against any Jewish person, or Jewish property." A-151-52, ¶¶677-78.

This is again, a legally baseless and circular argument premised on the

conclusory (and inaccurate) statement that Rabbi Cooper accused Farrakhan of inciting violence.  Rabbi Cooper never stated that Farrakhan "advocated for violence against any Jewish person, or Jewish property," only that he has a history of "anti-Semitic incitement."  Again, "anti-Semitic incitement" is neither a crime, nor a verifiable statement of fact.  Because the Anti-Semitic Incitement Statement itself cannot be objectively proven false, Rabbi Cooper could not have possibly known it may have been false.

Moreover, if the Court considers all the facts pled, including the statements from Farrakhan *in Appellants' Complaints*, Appellants cannot plausibly argue that Rabbi Cooper *knew* Farrakhan never incited anti-Semitism in his public speeches. *See* A-34 at ¶ 81 ("Now, that nation called Israel never has had any peace in forty years and she will never have any peace because there can be no peace structured on injustice, thievery, lying, and deceit, and using the name of God to shield your dirty religion under His holy and righteous name."); A-36 at ¶ 88 ("The Jews in that day wanted no truth to be told if it conflicted with their selfish desires. They did not care for the truth. They only wanted to hear that which made them comfortable in their web of lies and deceit.").  Indeed, the District Court noted that based on these statements, "the SAC itself alleges facts that would dispel any such expectation" that SWC Appellees' statements were made with knowledge of their falsity.  SPA-23.  In other words, *Appellants' own words*, as pled in the Second

31

Amended Complaint, provided sufficient evidence of anti-Semitic animus to disprove the notion that the SWC Appellees knew their commentary to be false. *See e.g.*, A-34 at ¶81, A-36 at ¶88, A-56 at ¶191.c, A-131 at ¶556.

Appellants have not alleged and cannot plausibly allege that SWC Appellees knew the statement about "anti-Semitic incitement" to be objectively false, and therefore, Appellants fail to establish malice, furnishing another, independent reason the District Court's dismissal of this claim should be affirmed.

## IV.    Issue 10 – The term "Anti-Semite" Should Not Be Defamatory *Per Se*

Despite decades of legal precedent holding the exact opposite, Appellants ask the Court to declare the term "anti-Semite" as the "fifth category" of defamation *per se*, because they allege that the term is harmful to their reputation. To be clear, Appellants have made no actual defamation claim:  Appellants have not identified any factual statement susceptible to a defamation analysis or alleged any facts to show actual malice.

Appellants further argue that the District Court "abused its discretion" because "did not specifically address the claim raised in Count 10 of the SAC." Appellants' argument is incorrect.  The District Court did consider this incoherent "claim," and properly declined to exercise jurisdiction over it because Appellants lacked standing.  SPA-24 (holding that "District courts have 'broad discretion to decline jurisdiction' under the Declaratory Judgment Act); *see Admiral Insurance*

*Company v. Niagara Transformer Corporation*, 57 F.4th 85, 100 (2d Cir. 2023); 28 U.S.C. § 220l(a).

In addition to rejecting Appellants' argument for lack of standing, the District Court further reasoned that there is a "heavy presumption against the constitutional validity of any imposition of a prior restraint," which constitutes "the most serious and the least tolerable infringement" on our freedoms of speech. SPA-24 (citing *United States v. Farooq*, 58 F.4th 687, 695 (2d Cir. 2023); *Citizens United v. Schneiderman*, 882 F.3d 374, 386 (2d Cir. 2018)). The District Court further held that "[n]othing in the SAC comes close to meeting the unequalled power of the presumption against prior restraint." SPA-24-25 (citing *Id. Citizens United*, 882 F.3d at 387). The District Court addressed Claim 10, and dismissed it decisively.

In this case, New York law has long recognized only four categories of *per se* defamation wherein "the law presumes that damages will result, and they need not be alleged or proven."[5] *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011) (citing *Liberman v. Gelstein,* 80 N.Y.2d 429, 435 (1992)). These four categories include statements: (1) charging plaintiff with a serious crime; (2) of false facts

---

[5] Defamatory statements that fall into these four categories need not prove damages, but the claimant must allege the other four elements of defamation. *See Palin*, 940 F.3d at 809.

33

that tend to injure another in his or her trade, business or profession; (3) that plaintiff has a loathsome disease; or (4) imputing unchastity to a woman. *Id.*

The above categories are limited to definitive statements of fact, which can be proven objectively true or false. This is in juxtaposition to the vague term "anti-Semite," which can mean different things to different people—as the present case clearly demonstrates. *See Holy Spirit Ass'n for the Unification of World Christianity*, 75 A.D.2d at 524 ("In the realm of religious faith, and in that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his neighbor."). Moreover, categorizing "Anti-Semite" as a *per se* category would be a pointless endeavor, because such a vague and subjective accusation would be a protected opinion under New York law, nullifying the first required element of defamation. *See e.g.*, *Carto*, 649 F. Supp. at 504; *Russell*, 97 A.D.3d at 651; *Comic Strip Promotions*, 76 Misc. 3d 1229(A); *Morgan*, 93 N.Y.S.3d 627 at *7. Indeed, Appellants have not appealed the District Court's ruling that SWC Appellees' use of "anti-Semitic" and "anti-Judaic" are protected opinions.

Even Appellants' sole forty-year old case cite is inapposite. In *Mullemeister v. Snap-On Tools Corp.*, the court **dismissed the defamation claim** for a drawing of plaintiff with a swastika on his head. 587 F. Supp. 868, 875 (SDNY 1984). The court there stated that "nasty epithets, however vitriolic, are not libelous." *Id.*

34

Moreover, Appellants' cherry-picked dicta doesn't support their argument. While allegations of racism and anti-Semitism may be libel *per se* "***when founded on specific incidents***," general accusations of anti-Semitism are not. *Id.* at 874 (emphasis added). More specifically, the *Mullemeister* court cited a number of cases involving plaintiffs who pled that they did not say specific racist or anti-Semitic statements that defendants' articles attributed to plaintiffs. *See e.g.*, *Afro-Am. Pub. Co. v. Jaffe*, 366 F.2d 649, 653 (D.C. Cir. 1966); *Schermerhorn v. Rosenberg*, 73 A.D.2d 276, 280, 426 N.Y.S.2d 274, 279 (1980); *Sweeney v. Schenectady Union Publishing Co.*, 122 F.2d 288, 289 (2d Cir.1941). None of these cases support the argument that the term "anti-Semitic" should be categorically considered defamatory *per se*.

Respectfully, this Court should decline Appellants' invitation to rewrite the law and make a non-defamatory term defamatory *per se*, and instead should affirm the District Court's dismissal with prejudice of this claim.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Appellants' baseless appeal, and affirm the District Court's decision to dismiss the claims with prejudice.

Dated:     September 3, 2024              Respectfully submitted,

                                          GLASER WEIL FINK HOWARD
                                           JORDAN & SHAPIRO LLP


                                          By:  */s/ Julie R.F. Gerchik*
                                          Patricia L. Glaser, California Bar #55668
                                          Julie R.F. Gerchik, California Bar #237764
                                          Eric Y. Su, California Bar #318120
                                          10250 Constellation Boulevard, 19th Fl.
                                          Los Angeles, California 90067
                                          Telephone:  (310) 553-3000
                                          Attorneys for Defendants-Appellees

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify pursuant to Fed. R. App. P. 32(a) and Local Rule 32(a)(4)(A) that the foregoing brief for Defendants-Appellees SWC and Rabbi Cooper is proportionately spaced, has a typeface of 14 points or more, and contains 6,484 words.

Dated: September 3, 2024          <u>*/s/ Julie R.F. Gerchik*</u>

                                         Julie R.F. Gerchik